NATIONAL BANK OF JACKSONVILLE, APPELLANT, VS. THEODORE WILLIAMS ET ALS., APPELLEES.

1. Every part of Chapter 3747, laws of Florida (being an act to protect mechanics, artisans, laborers and material men, and to provide for the speedy collection of moneys due them for wages or material furnished), which was not included in the Revised Statutes of the State of Florida, which went into effect and op-

eration June 13th, 1892, or which was not recognized or continued in force by reference therein, was expressly repealed by the act adopting such Revised Statutes.

2. The provisions of Chapter 3747, laws of Florida, by which, under certain conditions, a lien was created, or attempted to be created, in favor of laborers upon saw mills, upon the interest of the owner having the absolute title to said mills where the labor was performed upon a contract with a party in possession holding a less interest than such absolute title, not being included in the provisions of the Revised Statutes (secs. 1727-1741), which cover the same subject-matter, are thereby repealed.

3. The lien in favor of a laborer upon saw mills, provided by the act (Chapter 3747, laws of Florida) did not confer a substantive right upon the laborer, and forms no part of the obligation of the contract of employment. The right of the laborer to be paid for his services is not given by the act. The act merely provides the remedy—the means by which the right may be made available.

4. A remedy that the Legislature has created in derogation of the common law, it can take away. No one can have a vested right in a particular remedy; such a remedy forms no part of the essence of the contract, and until perfected by proceedings whereby rights in the property sought to be subjected have become vested, is entirely within the control of the law-making power, in whose edict it originated.

5. The saving clause of the act adopting the Revised Statutes, to the effect that the repeal of any statute by said revision shall not effect any right accrued before such appeal, where it uses the word "right," means a substantive right, as distinguished from a remedy. It was not the intention of the Legislature that the remedies by which such rights are given effect when omitted from such revision should remain in force.

6. Under the Revised Statutes, the lien of laborers upon saw mills, under Chapter 3747, laws of Florida, in so far as it affects the limited interest of the party in possession, and with whom the contract of employment is made, is preserved, and may still be
 · enforced against such limited interest.

7. An equitable title of a party in possession of property under a contract of purchase, and which, upon the performance of the conditions of the contract of purchase, would ripen and ma-

ture into a good legal title, is subject to a statutory laborer's lien, and is liable to be sold thereunder.

8. Without deciding whether under our general statutory policy, the owner of the absolute interest in property can, under any circumstances, be estopped from setting up his ownership of the property against a lien thereon arising from a contract of a party in possession having less than the absolute interest: *Held*, That such estoppel *in pais* can not be invoked by laborers upon a saw mill against an owner who is not interested in the operation of such saw mill or in its output, is guilty of no fraud or deceit upon the lien claimants, and who knew nothing of their employment, or that any labor had been performed by them, and such labor in no respect increases the value of the property upon which the lien is claimed.

Appeal from the Circuit Court for Suwannee county.

The facts are stated in the opinion.

*A. J. Henry* and *J. C. Cooper*, for Appellant.

*J. N. Stripling*, for Appellees.

LIDDON, J.:

The facts of the case which are necessary to be stated in passing upon the present appeal are as follows: On February 1, 1892, the appellant, who was complainant below, was the owner and in possession of a certain parcel of land in Suwannee county, described in its bill of complaint, together with a certain steam saw-mill and machinery located thereon. On said date the appellant entered into an executory written contract with a firm called Edge & Edwards, whereby it agreed to sell said property to said firm for $6,000, of which amount $500 was to be paid, and was paid, in cash, and the balance, of $5,500, was to be paid in monthly installments of $250, with interest. It was provided,

in substance, by said contract, that, in case of the failure of said Edge & Edwards to pay any of said installments for 15 days after the maturity thereof; that the contract of purchase should, at the option of the appellant, be forfeited and terminated, and that Edge & Edwards should forfeit all payments which in the meantime should have been made by them on the purchase price, and the appellant should have the right to re-enter and take possession of the same. Edge & Edwards immediately took possession in their own name, and for their own benefit operated the sawmill in the manufacture of lumber until about June 13, 1892. About said last-named date, Edge & Edwards having made default in the payment of two installments, the appellant exercised the option provided by said contract, and repossessed itself of the property. Afterward, June 27, 1892, Edge & Edwards, acquiescing in such action of the appellant, executed to it a deed releasing and conveying the property to appellant. During the time that the property was in possession of Edge & Edwards, between February 1, 1892, and June 13, 1892, they employed various persons as laborers for the operation of said sawmill, and became indebted to said persons in various amounts which were due and unpaid. The appellant filed its bill of complaint in the court below, alleging in detail the facts above summarized, and (further summarizing the bill) that the said laborers who, together with Edge & Edwards, were made parties defendant to said bill of complaint, claimed liens for the respective amounts due them, under Chapter 3747, Laws of Florida, and were taking steps for the purpose of enforcing said liens upon appellant's property; that, if not enjoined, the defendants will proceed to sell said property for the

satisfaction of said liens; that defendants are wholly insolvent; and that such a sale would be a cloud upon complainant's title. The bill prayed for an injunction against defendants' proceeding to enforce the liens, and a temporary injunction was granted.

The defendants who claimed the lien answered the bill of complaint. No question was made as to the sufficiency of the allegations of the bill to authorize a court of equity to grant the relief prayed for. Considering the allegations of the answer, it is alleged therein that, at the time of performing the labor in the operation of the sawmill, the appellees found Edge & Edwards in full management, possession, and control of the sawmill and lot of land upon which it stood, and openly and notoriously claiming and exercising acts of ownership over the same; and that defendants, at the time of performing the labor, honestly supposed Edge & Edwards to be the owners of the same, having no notice or knowledge to the contrary; that the written contract of sale of appellant to Edge & Edwards had not been recorded; that they relied upon the lien given by law as a security for the payment of their wages, and still claimed the benefit of said lien. Testimony was taken by both parties, and, on final hearing, the relief prayed for in the bill was denied, and the bill dismissed, from which the complainant in said bill the appellant here appealed.

From the proof taken, it appears that the appellant did not know, except from a statement of the intention of Edge & Edwards to do so, that the sawmill was being operated, and only knew from a general knowledge that labor was necessary to operate the same; that any laborers were being employed by Edge & Edwards, or performing any labor for them. It had

310      SUPREME COURT.

National Bank of Jacksonville v. Williams et als.—Opinion of Court.

no knowledge of the persons performing such labor, or of anything being due such persons for the same. Neither appellant nor Edge & Edwards had posted any notice, as provided for in section 2 of Chapter 3747 (Acts 1887, pp. 126, 127), stating what portion of the property, if any, is exempt from the lien of laborers. The bill of complaint admits that the laborer defendants acquired, by the performance of their labor, a lien upon whatever interest the defendants Edge & Edwards had in said property, but denies that they thereby acquired any lien upon the interest of appellant. The appellees claim a lien under section 2 of Chapter 3747, *supra*, which reads as follows: "That any person or persons who shall perform any labor upon, or for the benefit of, any railroad, canal, telegraph or telephone company, wharf, mill, distillery or other manufactory, whether in the construction, repairing or operating thereof, shall have a lien of superior dignity upon such railroad, canal, telegraph or telephone lies, appurtenances and properties thereof, wharf, mill, distillery or other manufactory, together with the owner's, lessee's or operator's interest in the lot or land upon which they stand, together with all franchises, machinery and equipments, to the extent of the value of any labor performed thereon or therefor, whether such labor was performed for the owner or his agents, or for a contractor or subcontractor, or a lessee or operator: provided, that said lien shall only apply to the interest of the lessee or operator of sawmills, unless the lessor, by virtue of a lease, becomes part owner in the lumber and other material manufactured; provided further, that the land or wharf upon which any mill, distillery or other manufactory is situated, and which is held under lease, shall not be sub-

jected to any lien other than on the leasehold interest. But in all cases the lien shall exist upon the subject-matter upon which the labor is performed. On or after the passage of this act every mill owner or other manufacturer shall cause to be posted in a conspicuous place a notice, which notice shall state what portion of the machinery, material or other matter is exempt from this lien. Any failure to comply with this notice shall render liable all the property apparently belonging to said business." They claim that their lien should attach to the whole property, and all the right and interest of appellant therein, because of the failure to cause the notice to be posted in a conspicuous place, as provided in said section. Much learned argument is made in the briefs of parties as to the constitutionality of this provision of the act, and as to whether it is sufficiently definite and certain in its terms that it can be enforced. In view of the conclusions hereinafter announced, these questions are not open for consideration. The labor under which the liens are claimed was performed while the act upon which they are predicated was in force. Before the bill of complaint was filed or any steps taken to perfect or enforce the lien, the Revised Statutes of the State of Florida, on June 13, 1892, went into effect and operation; and every part of Chapter 3747 which was not included in the Revised Statutes, or recognized or continued in force by reference therein, was expressly repealed. (See section 1 of the act adopting the Revised Statutes, prefixed thereto). Conceding, for the purposes of this discussion, that the section above quoted of the act under which the liens are claimed provided liens in favor of the appellees under the facts stated on the interest of the appellant, the grave and difficult ques-

312          SUPREME COURT.

National Bank of Jacksonville v. Williams et als.—Opinion of Court.

tion yet remains as to what is the effect of the repeal
of the provision of the section of Chapter 3747, by
which alone any lien on the interest and title of appel-
lant can be claimed. Not being included in those pro-
visions of the Revised Statutes which cover the same
subject-matter (sections 1727 and 1741), and by which
it is provided that the liens of laborers performing labor
in the operation of sawmills, by the procurement of
a person having less than the absolute interest, "shall
be only upon the limited interest of such person," all
provisions of the act (Chapter 3747) upon which ap-
pellees, by virtue of a contract of employment by
Edge & Edwards, claim a lien upon the title or inter-
est of appellant, are repealed. After reaching the
conclusion stated in the preceding sentence, the diffi-
cult and complicated question then presents itself as
to whether or not, by performing the labor in the op-
eration of the sawmill while the former act was in
force, such rights, under such act, have not accrued to
appellees as to be within the saving power of section
3 of the act adopting the Revised Statutes, which pro-
vides that "the repeal of any statute by said revision
shall not affect any right accrued before such appeal."
The lien provided by the act arose at the time the la-
bor was done (section 17, Chapter 3747, Laws of Flor-
ida), and the determination of this question turns
upon the point whether the lien thus provided is a
substantive right, or is only a remedy for the collec-
tion of a debt. If it was a vested right, forming part
of the obligation of the contract, neither upon general
constitutional principles nor upon the plain terms of
the repealing statute could it be affected by the repeal.
If it was only an additional cumulative remedy, pro-
vided by statute for the collection of a debt, it was

extinguished by the repealing act. An examination of the authorities upon the subject demonstrates that they are in irreconcilable conflict. Among those authorities which put the laborer's lien upon the basis of a right, and as a part of the obligation of a contract which can not be impaired by subsequent legislation, are Tell vs. Woodruff, 45 Minn. 10, 47 N. W. Rep. 262; Phillips, Buttorff & Co. vs. Mason & Co., 7 Heisk. 61; Willamette Falls Trans. & Mining Co. vs. Riley, 1 Or. 183; Andrews vs. Washburn, 3 Smedes & M. 109; Weaver vs. Sells, 10 Kan. 609 (text, 619); In re Hope Mining Co., 1 Sawy. 710 (text, 712). As these authorities appear to be in the minority, and do not, in our opinion, correctly express the principles of law upon the subject, we will not extend this opinion by quotations from them.

According to our view, the lien provided by the statute does not confer a right upon the laborer, and forms no part of the obligation of the contract of employment. The right of the laborer is to have his hire,—to be paid for his services. This right is not given by the act. He has it without the act. He had it before the act was in force. The lien merely provides the remedy,—the means by which the right may be made available. It is an additional cumulative remedy to the common law action of assumpsit for work and labor done. The laborer is not left to establish his rights as at common law, but a more tangible and practical means of collecting is afforded him. Hall vs. Bunte, 20 Ind. 304. Upon the subject of the nature and character of a similar lien, and the power of the Legislature to repeal the same, we adopt the views of the Supreme Court of Michigan, which has well said: "This remedy, that the Legislature has created in derogation

of the common law, it can take away, and no one can
have a vested right to any particular remedy. The
counsel for the appellants cites some cases which sus-
tain his claim that the lien of his clients became vested
as soon as the materials were furnished, and could not
thereafter be destroyed by the Legislature without im-
pairing the obligation of the contract under which the
defendant received and the plaintiffs furnished the
lumber. The most notable case is that of Weaver vs.
Sells, 10 Kan. 609. But the weight of authority is de-
cidedly against this claim. The lien given by statute
is no part of the contract. Without the statute creat-
ing the lien, the debtor was bound to pay the creditor
the same as he would be with the lien. He had before
this the common law remedies to enforce the collection
of his debt. The statute giving him a lien does not
take away any remedy under the common law, but
adds another, by fixing a lien upon the premises in
case he sees fit to enforce it. This lien does not grow
out of the contract, but depends entirely upon the
statute for its existence. It derives its validity from
positive enactment of the Legislature, and is liable al-
ways to be modified, altered, or repealed by the same
power that created it. If it is true, one may contract
to furnish the materials in view of the law as it exists
at the time, but he furnishes the same, nevertheless,
with notice that the law is subject to the will and con-
trol of the Legislature. The lien is but a means of en-
forcing the payment of the debt arising from the per-
formance of the contract,—a remedy given by law,
which remedy, not being of the essence of the contract,
is entirely within the control of the lawmaking power
by whose authority it was given life. The right to a
particular remedy is not a vested right." Hanes & Co.

JUNE TERM, 1896. 315

National Bank of Jacksonville v. Williams et als.—Opinion of Court.

vs. Wadey, 73 Mich. 178, 41 N. W. Rep. 222; S. C. 2 L. R. A. 498. Sustaining the views set forth in the quotation above are Evans vs. Montgomery, 4 Watts & S. 218; Seattle & Walla Walla R. R. Co. vs. Ah Kow, 2 Wash. T. 36, Best vs. Baumgardner, 122 Pa. St. 17, 15 Atl. 691, S. C. L. R. A. 156; Bangor vs. Goding, 35 Me. 73; S. C. 56 Am. Dec. 688; Frost vs. Ilsley, 54 Me. 345 text, 351; Watson vs. New York Central Railroad Co., 47 N. Y. 157; Woodbury vs. Grimes, 1 Colo. 100, text 104; Templeton vs. Horne, 82 Ill. 491; Williams vs. Waldo, 3 Scam. 264; Smith vs. Bryan, 34 Ill. 364; Martin vs. Hewitt, 44 Ala. 418, text 435; 1 Jones on Liens, sec. 107; Phil. Mech. Liens, sec. 25 *et seq*. In Frost vs. Ilsley, *supra*, it is said: "The lien is the creature of the statute. It is no part of the contract, but a merely incidental accompaniment, deriving its validity only from positive enactment, and liable always to be controlled, modified, or taken away by subsequent enactment, and such modification or removal can not be considered as in any degree impairing the obligation of the contract itself. The lien is but a means of enforcing the contract, a remedy given by law; and like all matters pertaining to the remedy, and not to the essence of the contract, until perfected by proceedings whereby rights in the property over which the lien is claimed have become vested, it is entirely within the control of the lawmaking power in whose edict it originated." In view of these authorities, we are constrained to the opinion that the saving section of the act adopting the Revised Statutes, where it used the word *right*, meant a substantive right, as distinguished from a remedy; that it was not the intention of the Legislature that the remedies by which such rights are

given effect, when omitted from such revision, should still remain in force.

Under the Revised Statutes, the lien of Chapter 3747, in so far as it affects the limited interest of Edge & Edwards, is preserved to appellees, and they still have the right to subject to their liens the interest of such firm. This follows because the lien, as against Edge & Edwards, is practically the same in the Revised Statutes as in the act of 1887. Such liens, having accrued before June 27, 1892, when Edge & Edwards made the deed of release to the appellant, are prior in dignity to the title and claim of appellant, based upon the deed of release of that date. In so far, and so far only, as such title and claim are founded upon such deed of release, Edge & Edwards had an equitable title, which, upon the performance of the conditions of the contract of purchase, would ripen and mature into a good legal title. Such equitable title was subject to appellees' liens, and liable to be sold thereunder. 2 Jones on Liens, sec. 1257, and authorities cited in notes; also, Donaldson vs. Holmes, 23 Ill. 85, citing other Illinois cases; Edwards & McCulloch Lumber Co. vs. Mosher, 88 Wis. 672, 60 N. W. Rep. 264; Phil. Mech. Liens, sec. 188, and authorities cited. Upon a sale of the property to foreclose appellees' liens, the purchaser would take the same interest that Edge & Edwards held at the time the labor was performed, i. e. the right to the possession of the property, and to receive the legal title upon payment of the balance of the purchase money in accordance with the contract, subject to the rights of the appellant, as stipulated in the contract of purchase. Thomas vs. Ellison, 57 Ark. 481, 22 S. W. Rep. 95.

It is claimed on the part of appellees that, even if

JUNE TERM, 1896.    317

National Bank of Jacksonville v. Williams et als.—Opinion of Court.

they have not acquired a lien in strict accordance with the statute, that the appellant is by the facts of the case estopped from setting up his ownership of the property against them.    Although a mechanic's or laborer's lien is universally regarded as the creature of statute, and to be acquired only under the conditions and in the manner specified in the act, still there is much authority giving ground for the assumption that it can be created by estoppel; or, rather, stating the proposition more exactly, can be extended by estop pel *in pais* to a higher title and interest in land than the limited estate specified in the strict letter of the act.    Whether, under our statutes, construed in the light of our general statutory policy, it could, under any circumstances, be so created or extended in this State, we are not called upon by the facts of this case to determine.    We have, after diligent search, been able to find no authority creating or extending such a lien by estoppel where the facts and circumstances were similar to those of the present case.    Every one of such cases we have seen where the contract arose upon a statute like ours, confining the lien to the limited interest of the person for whom the labor is performed, arose upon a state of facts different from those now under consideration.    They were cases where the owner of the fee in the land was guilty of fraud and deceit practiced upon the lien claimant, and aided by direct representations in creating the belief that the party in possession owned the land; or where he passively laid by, and knowingly permitted another to expend money in improving the estate, and then sought to reap the benefit of the enhanced value without paying for it; or where the contract between the vendor and vendee expressly stipulated for the erection of the improvements,

or where the circumstances of the transaction justified
the conclusion of fact of the expressed or implied con-
sent of the owner to the erection of the improvements,
or that the tenant in possession acted as agent of the
owner in having the work done. The appellant was
not guilty of any of these acts, which, in cases of the
kind referred to, have been held as estopping the owner
from denying the ownership of the party in possession,
and at whose instance the work was performed. It
had its office and place of business 80 miles away from
the property. Aside from its knowledge of the ex-
pressed intention of Edge & Edwards to operate the
mill, and their general knowledge that such operation
could not be conducted without the assistance of labor,
they knew nothing of the employment of appellees, or
that any labor had been performed by them. This
case differs from all of those where the owner, by his
acts, has been held estopped, in the fact that in all such
cases the labor has been performed in the improve-
ments upon the land, and which enhanced the value
thereof, while in this case no work was done that in
any degree increased the value of appellant's property
upon which the lien is claimed. The work was done
only by the use of the property,—the sawmill,—in the
manufacture of lumber. Upon the subject of a want
of knowledge in such cases, an eminent author has
said: "To create this estoppel, however, there must
always be knowledge, on the part of the person to be
estopped, of the acts out of which it is to arise; other-
wise, the most serious frauds might themselves be per-
petrated under a rule established for its prevention,
and men, without their knowledge or consent, be
stripped of their estates." Phil. Mech. Liens (3d Ed.)
sec. 76. While knowledge on the part of appellant

that the work was being done was necessary in order to charge its interest, we do not think that such knowledge alone, even coupled with notice of the expressed intention of Edge & Edwards to operate the property as a sawmill, is sufficient for that purpose, under the facts of this case. Hayes vs. Fessenden, 106 Mass. 228, and authorities cited; O'Conner vs. Hurley, 147 Mass. 145, 16 N. E. Rep. 764; Copeland vs. Kehoe & Ramsey, 67 Ala. 594; Woodward vs. McLaren, 100 Ind. 586; Leismann vs. Lovely, 45 Wis. 420; Peabody vs. Eastern Methodist Society, 5 Allen, 540. The facts in Saunders vs. Bennett, 160 Mass. 48, 35 N. E. Rep. 111, are very similar to those of the present case. The labor was performed under the employment of a party who was in possession under an executory contract of purchase. The owner of the land knew that the labor was being furnished, but did not know who was doing the work. He gave no notice of his ownership, from which it was claimed that the work was done with his implied consent. Upon this subject the court said: "Consent has been treated as meaning conduct expressive of consent. * * It may be that silence is such conduct under some circumstances; but as the petitioner did not know that Priest was an owner, and as it does not appear that Priest knew who was doing the work, or under what contract he was doing it, or that any lien was or might be claimed by any one, Priest's silence ought not to have such a meaning attributed to it in this case. * * Again, the case is not like those where the contract between the owner and the purchaser requires the latter to build, and thus, by implication, authorizes him to employ the necessary workmen."

Neither do we think, under the circumstances, that

the interest of the appellant can be subjected to the laborer's lien, upon the ground that Edge & Edwards, in employing appellees, acted as agents of the appellant. These parties operated the mill in their own name, and for their own benefit, and so informed such of appellees as inquired about the matter. The appellant was not interested in the operation of the mill, or in its output; and appellees, at the time of performing the work, knew nothing whatever of appellant's title to the property, nor had they any reason to suppose that, in their employment, Edge & Edwards were acting as agents of the appellant. If, by reason of this state of affairs, any hardship happens to the lien claimants, it is because of their own want of care to ascertain the ownership of the property upon which they were performing their labor. There is no claim whatever that the title of the appellant to the property was not of record, and in that manner gave notice to the world. Persons who desire to avail themselves of mechanics' and laborers' liens should take care to inform themselves with whose estates they are dealing, when they make their contracts and perform their labor. Peabody vs. Eastern Methodist Society, 5 Allen, 540; Mellor vs. Valentine, 3 Colo. 255; Weaver vs. Sheeler, 118 Pa. St. 634, 12 Atl. Rep. 558; Phil. Mech. Liens, sec. 79.

Other questions of minor importance are presented by assignments of error and briefs of counsel. What has been said, however, so thoroughly disposes of the matter in litigation between the parties that these minor points need not be discussed. We will, however, say that, upon the evidence, we do not think there is any ground for the contention that appellees' claims were paid, or their lien extinguished, by the instru-

ment executed by Edge & Edwards to the appellee, Theodore Williams.

From what has been said, it follows that the decree of the Circuit Court dismissing the bill of complaint, and wholly dissolving the injunction, was erroneous, and the same is reversed. The case should be reinstated, and the injunction modified in accordance with the views expressed herein, so that the appellees may, if they see fit, pursue their lien upon the interest of Edge & Edwards.