**MIAMI HEALTH STUDIOS, INC., a Florida Corp., a/k/a Magic Figure Maker System, Inc., et al., Petitioners,**

**v.**

**The CITY OF MIAMI BEACH, a Political Subdivision of the State of Florida, et al., Defendants.**

**No. 72–1927–Civ.**

United States District Court, S. D. Florida.

Dec. 26, 1972.

Supplemental Opinion Jan. 12, 1973.

Paul F. Gerson, Miami Beach, Fla., for petitioners.

Joseph A. Wanick, City Atty., Miami Beach, Fla., Richard Gerstein, State's Atty., Stuart Simon, County Atty., Miami, Fla., for defendants.

## FINAL JUDGMENT

MEHRTENS, District Judge.

This cause came on for hearing on Friday, December 8, 1972, after due notice, upon Petitioners' Motion for Temporary Restraining Order and other relief. The Court, having heard testimony presented by the parties and argument of counsel, hereby makes the following memorandum opinion its findings of fact and conclusions of law, in accordance with Rule 52(a), Federal Rules of Civil Procedure.

Jurisdiction for this action is founded upon 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343(3) and (4) and 2201.

Petitioner Miami Health Studios, Inc., a/k/a Magic Figure Maker System, Inc., is a Florida corporation engaged in business at 517 Arthur Godfrey Road on Miami Beach, Florida. The other named petitioners are employees or agents of the corporation who have been arrested and charged with violating various subsections of Florida Statute § 796.07 (1971), F.S.A., a copy of which is attached hereto as Appendix "A". The petitioner's premises consist of a regular gymnasium/exercise room equipped with weightlifting equipment, steam rooms and sauna baths, and individual massage rooms or booths.

Defendant City of Miami Beach is a political subdivision of the State of Florida. Richard E. Gerstein is the State Attorney whose jurisdiction, the Eleventh Judicial Circuit in and for Dade County, Florida, includes the City of Miami Beach. Rocky Pomerance is the Chief of Police of the defendant city. James Levenson is the Acting Constable for the Fifth District of the State of Florida. The other named defendants are individual police officers of

the City of Miami Beach or Deputy Constables of the Fifth District.

Beginning on or about July 18, 1972 and on at least nine other occasions,[1] individual police officers of the defendant city, acting in undercover capacities, visited the petitioner's premises posing as potential customers. The August 14, 1972 "raid" was the only such raid against these petitioners conducted by the office of the Constable and his deputies, and as the evidence clearly showed, was conducted independently by that agency. No prior consultation was had with either the State Attorney's office or the Miami Beach Police Department. The August 14, 1972 raid, standing alone, would not require the exercise of this Court's equitable jurisdiction via the "special circumstances" test of *Younger* and its progeny (*See, infra* at p. 596). Although at the hearing the Court expressed concern over the disregard by the Deputy Constables of certain rights of the petitioners arrested on that occasion, whatever injury to petitioners' federally protected rights arising out of that separate occurrence could have been eliminated by petitioners' defense to that single criminal prosecution. All charges resulting from the August 14 raid by the Constable's office were subsequently dropped.

The Court cannot, however, consider each of the ten raids conducted by the Miami Beach police officers an isolated good-faith attempt to enforce F.S. 796.-07, F.S.A. Each of the first nine raids was conducted in a similar manner as outlined below; the November 30, 1972 raid will be discussed separately. On each of the first nine raids, two undercover officers would enter the premises, seeking a massage treatment. Once the undercover officer had satisfied himself that the massage which he had received was violative of the provisions of the questioned statute, he would pay the prescribed fee. Marked bills were utilized on several occasions; at other times they were not used. The officer would thereafter wait for his partner to finish receiving his treatment and the two would then identify themselves and effectuate arrests of those employees who had given the massages, as well as the other employees who were on the premises. Two or three other police officers who had been stationed outside of the premises would then be signalled. They would enter the premises and would assist in the arrests, searches, seizures and transportation of the arrestees and seized items to headquarters for processing.

As many as six officers were present on several of the raids. Customers were searched and warned not to return to the premises. Several of the raids were covered by television cameras and the press. Arresting officers stated on numerous occasions that they were going to continue the raids and arrests until petitioner's employees quit their jobs and until the business was closed down. Some employees were unnecessarily detained in jail until "processing" was completed, for as long as seven hours; some were threatened with overnight detention pending bond hearings in the morning. "Evidence" was seized without search warrants from areas other than the cubicles in which the alleged misdemeanors took place. No search or arrest warrants were presented to petitioners on any occasion. In no instance did any police officer testify that there was any attempt to obtain either arrest or search warrants.

On November 30, 1972 a larger number of officers than on previous raids effectuated an arrest of all employees on the premises, a wholesale seizure of twelve massage tables, vibrators, business records and other items, including four telephones which were removed from the walls. The officer who decided

---

1. The complaint listed July 18, July 29, July 31, October 1, October 14, October 25, October 27, November 25, November 26, November 29 and November 30 as the dates of the visits. At the hearing counsel for petitioners amended the complaint *instanter* to correct the October 14 date to August 14, 1972.

to seize the telephones testified that it was his opinion that the telephones were "accouterments" of the crime which could be used to prove violations of the statute. The removal of the telephones and the seizure of all the equipment on November 30, 1972 effectively closed petitioner's business.

None of the charges against the petitioners have been brought to trial in the Municipal Court or the Dade County Criminal Court of Record, even though many of the charges were filed more than 60 days before this action was instituted. These charges would thus be subject to dismissal under the Florida Speedy Trial Rule, Rule 3.191, Florida Rules of Criminal Procedure, 33 F.S.A., if a demand for speedy trial were filed by petitioners.

## COMITY CONSIDERATIONS

■ Based upon the foregoing factual findings, this Court has both the jurisdiction and the duty to exercise that jurisdiction in this case. The Court is cognizant of the teachings of Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed.2d 669 (1971), its companions[2] and its progeny in the Fifth Circuit.[3]

The Supreme Court's holding in *Samuels*, n. 2, *supra*, is applicable to the facts and circumstances of the instant case:

"We therefore hold that, in cases where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether

to issue a declaratory judgment . . . ."

401 U.S. 66 at 73, 91 S.Ct. 764 at 768. The relevant equitable principles were spelled out in *Younger*. In order to obtain equitable relief, the traditional prerequisite has been a showing of irreparable injury. But in light of the

"fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is 'both great and immediate.' . . . the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." (Citations omitted)

*Younger, supra*, at 46, 91 S.Ct. at 751.

■ Similarly, the mere fact that a statute may be unconstitutionally vague or overly broad does not justify federal court intervention. To enjoin a pending state prosecution, the plaintiff must additionally demonstrate "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Id.* at 54, 91 S.Ct. at 755.

■ Petitioners in the instant action came before this Court only after a series of eleven raids by the defendants, and after their business was effectively closed down by the removal of the massage equipment and the business telephones on November 30, 1972. *Cf.* Hunt v. Rodriguez, 462 F.2d 659 (5th Cir. 1972). Certainly the behavior of the defendants, especially that of the defendant City and its police officers, in continuing to arrest and harass the petitioners, in making wholesale seizures of

**2.** Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1970) ; Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L. Ed.2d 696 (1970) ; Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1970) ; Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1970) ; and Byrne v. Karalexis, 401 U.S. 216, 91 S. Ct. 777, 27 L.Ed.2d 792 (1970).

**3.** *See, e. g.*, Livingston v. Garmire, 442 F.2d 1322 (5th Cir. 1971) ; Duncan v. Perez,

445 F.2d 557 (5th Cir. 1971) ; Becker v. Thompson, 459 F.2d 919 (panel opinion), 463 F.2d 1338 (on pet. for rehearing) (5th Cir. 1972) ; Reed v. Giarrusso, 462 F.2d 706 (5th Cir. 1972) ; Hunt v. Rodriguez, 462 F.2d 659 (5th Cir. 1972) ; Shaw v. Garrison, 467 F.2d 113 (5th Cir. 1972) ; Palaio v. McAuliffe, 466 F.2d 1230 (5th Cir. 1972).

petitioner's property without warrants and in not bringing any of the criminal prosecutions to trial so that petitioners could have had the opportunity to challenge the statute in question, meets the *Younger* special circumstances test to allow this Court to reach the merits of petitioners' claims. In Shaw v. Garrison, 467 F.2d 113 (5th Cir. 1972), a case arising out of the attempt by District Attorney Jim Garrison of New Orleans to connect Clay Shaw with the assassination of President Kennedy, the Fifth Circuit Court of Appeals stated:

> "We hold, as the language of *Younger* makes clear, that a showing of bad faith or harassment is equivalent to a showing of irreparable injury for purposes of the comity restraints defined in *Younger*, because there is a federal right to be free from bad faith prosecutions.[7] Irreparable injury need not be independently established."

And continuing from footnote 7:

> "Irreparable injury is not merely inferred; irreparable injury for the purposes of *Younger* is conclusively shown by a showing of bad faith or harassment."

*Id.* at 120

This Court is satisfied that petitioners have demonstrated harassment and irreparable injury sufficient to invoke the Court's jurisdiction to grant prophylactic relief. "When the federal right sought to be protected is the right not to be subjected to a bad faith prosecution or a prosecution brought for purposes of harassment, the right cannot be vindicated by undergoing the prosecution." Shaw v. Garrison, *supra*, at 122 n. 11.

## DECLARATORY RELIEF

Although the Court's *Younger* and *Samuels* jurisdiction is established, it is necessary to delineate the basis for the Court's proceeding as a single judge rather than as a three-judge court under the provisions of 28 U.S.C. § 2281. "The questions of great and immediate irreparable injury and of bad faith harassment are properly resolved by a single judge." Hunt v. Rodriguez, 462 F.2d 659, 662 (5th Cir. 1972). While the complaint as drafted prays for injunctive relief against state officers enforcing a state statute, after the Court indicated it could not issue the prayed-for injunction pending the convening of a three-judge court (which can be accomplished in a matter of days), it became evident that the petitioners were primarily seeking a declaratory decree with respect to the constitutionality of F.S. 796.07, F.S.A. The Fifth Circuit Court of Appeals has recently recognized the jurisdiction of a single district judge to enter such a declaratory decree. Triple A Realty, Inc. v. Florida Real Estate Commission, 468 F.2d 245 (5th Cir. 1972). Furthermore, in view of the posture which this action had assumed by the conclusion of the December 8 hearing, *see, infra*, p. 599, this Court's declaratory decree became the *only* relief sought.

In the Court's opinion, F.S. 796.-07, F.S.A., is so vague, indefinite and uncertain as to render it violative of the petitioners' Fifth and Fourteenth Amendment rights to due process of law, in that its language, particularly subsection (1)(b) thereof, is not so clearly and definitely expressed that a man or woman of common intelligence could determine in advance whether his or her contemplated act was within or without the law. Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); Cramp v. Board of Public Instruction, 368 U.S. 278, 287, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961); Raley v. Ohio, 360 U.S. 423, 438, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959); United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954); United States v. Cardiff, 344 U.S. 174, 176, 72 S.Ct. 1034, 96 L.Ed. 1346 (1952); Jordan v. De George, 341 U.S. 223, 230–232, 71 S. Ct. 703, 95 L.Ed. 886 (1951); Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939); Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926); United States v. Cohen Grocery Co., 255

U.S. 81, 89, 41 S.Ct. 378, 65 L.Ed. 516 (1921); International Harvester Co. v. Kentucky, 234 U.S. 216, 221–223, 34 S. Ct. 853, 58 L.Ed. 1284 (1914).

■ The vice of vagueness is not only the inability of the public to know what conduct is prohibited, but is the statute's failure to provide explicit standards for those who apply and enforce the law, to prevent arbitrary and discriminatory enforcement. *See, e. g.* Papachristou, *supra;* Coates v. City of Cincinnati, 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); Interstate Circuit v. City of Dallas, 390 U.S. 676, 684–685, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968); Ashton v. Kentucky, 384 U.S. 195, 200, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966); Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 477 (1966); Shuttlesworth v. City of Birmingham, 382 U.S. 87, 90–91, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965); Thornhill v. Alabama, 310 U.S. 88, 97–98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); Herndon v. Lowry, 301 U.S. 242, 261–264, 57 S.Ct. 732, 81 L.Ed. 1066 (1937).

The courts of Florida have provided no enlightenment with respect to construction of the statute in question, nor has there been authoritative interpretation of the particularly offending phrase " 'lewdness' shall be construed to include any indecent or obscene act," found in subsection (1)(b) of the statute. The Florida Supreme Court had the occasion to interpret the term "lewd" with respect to F.S. § 800.04, F.S.A., which prohibits, *inter alia,* the knowing commission of "any *lewd or lascivious* act" in the presence of a child under the age of fourteen, in Chesebrough v. State, 255 So.2d 675 (Fla.1971):

" 'Lewd' and 'lascivious' are words in common use, and the definitions indicate with reasonable certainty the character of acts and conduct which the Legislature intended to prohibit and punish, so that a person of ordinary understanding may know what conduct on his part is condemned.

See State v. Evans, 73 Idaho 50, 245 P.2d 788 (1952).

Lewdness may be defined as the unlawful indulgence of lust, signifying that form of immorality which has a relation to sexual impurity. It is generally used to indicate gross indecency with respect to the sexual relations. See 50 Am.Jur.2d, Lewdness, Indecency, etc., § 1, pp. 450–451, which contains a discussion of the common law definition of lewdness. This Court in Boles v. State, 158 Fla. 220, 27 So.2d 293 (1946), in discussing Fla.Stat. § 800.04, F.S.A., said:

'In fine, the statute condemns an assault on or an act committed in the presence of a child under fourteen years of age in a lewd, lascivious, or indecent manner, without intent to commit rape. The assault or the act is constituted a felony, and the maximum penalty is ten years in the county jail or the state prison. *"Lewd", "lascivious", and "indecent" are synonyms and connote wicked, lustful, unchaste, licentious, or sensual design on the part of the perpetrator.'* (p. 294) (Emphasis supplied.)

The words 'lewd' and 'lascivious' behavior when used in a statute to define an offense has been held to have the same meaning, that is, an unlawful indulgence in lust, eager for sexual indulgence. . . ."
*Id.* at 677

Despite the apparent ease with which the Supreme Court of Florida may have understood the terms "lewd" and "lascivious" in *Cheseborough, supra,* it is inconceivable to this Court that the same Supreme Court of Florida nine days later in Franklin v. State, 257 So.2d 21 (Fla.1971), held F.S. § 800.01, F.S.A., facially unconstitutional for vagueness and uncertainty. That statute outlawed "the abominable and detestable crime against nature, either with mankind or with beast." Two months later the same court held the Florida abortion statute unconstitutionally vague because of the inclusion of the phrase "necessary

to preserve the life" of the mother. State v. Barquet, 262 So.2d 431 (Fla. 1972). Thus, without authoritative guidance from the Florida courts, this Court has proceeded to analyze the subject statute solely from that language selected and approved by the state legislature. And it is that language which the Court today condemns as violative of petitioners' due process rights.

■ This Court does not invade the province of the legislature to define criminal offenses. The Court, although asked to do so by petitioners, does not hold that the subject statute offends any right of privacy belonging to them. Therefore, the legislature is free, within its broad police power, to pass legislation prohibiting any specific conduct which it may deem advisable. All that this Court holds is that the legislature refrain from using such broad language as "lewdness shall include any indecent or obscene act" when it tells the people of Florida what conduct constitutes a criminal offense. The people are entitled to know, as specifically and as clearly as possible, what acts they can perform without the threat of criminal prosecution. The law enforcement agencies of this state are likewise entitled to have the benefit of delineated standards by which they can ascertain whether or not a citizen's conduct is violative of the law.

Although defendants' counsel stated to the Court at the hearing that there was no severability clause found in F.S. 796.07, F.S.A., research has disclosed that when the legislature passed the original act from which the present statute was codified, Ch. 21664, Laws of Florida (1943), it contained a subsection which read as follows:

"Section 6. That in the event any section of this Act, or any part thereof, shall hereafter be held to be uncon-

stitutional, the remainder of this Act shall not be affected thereby."

Unfortunately, either by design or by legislative oversight, Section 6 was deleted from the Act when it became F.S. 796.07, F.S.A. See F.S. 796.07 (1949), F.S.A. Today, and at all times material to this action, the law of Florida, of which this Court is bound to take judicial notice, is F.S. § 796.07 (1971), F.S.A., which includes only subsections 1–5 of the original Act. By virtue of F.S. § 11.2422,[4] F.S.A., and National Bank of Jacksonville v. Williams, 38 Fla. 305, 20 So. 931 (Fla.1896), F.S. 796.07, F.S.A., now contains no severability clause. Only the Florida legislature could engraft such a clause upon this statute. Therefore, this Court must declare the statute unconstitutional in its entirety.

The Court having issued its opinion on the constitutionality of the challenged statute, the parties having stipulated that all evidence has been presented to the Court which would have been presented at a final hearing on the merits (Rule 65, Federal Rules of Civil Procedure), the petitioners having withdrawn their request for injunctive relief and having stipulated to a dismissal of their damage claims in return for the defendants' agreeing to return all equipment and other items seized during the various raids upon petitioners' premises, it is

Ordered and adjudged that the stipulations entered into by the parties in the record of the Court's hearing on December 8, 1972 be and the same hereby are accepted and approved by the Court, it being further

Ordered and adjudged that F.S. § 796.07 (1971), F.S.A., be and the same is hereby declared to be in violation of petitioners' Fifth and Fourteenth Amendment rights to due process of law, it being further

4. "Every statute of a general and permanent nature enacted by the state or by the territory of Florida at or prior to the regular 1969 legislative session, and every part of such statute, not included in Flor-

ida Statutes, 1971, as adopted by § 11.-2421, as amended, or recognized and continued in force by reference therein or in §§ 11.2423 and 11.2424, as amended, is repealed."

Ordered and adjudged that the remaining portions of petitioners' complaint be and the same hereby are dismissed, it being further

Ordered and adjudged that the State of Florida's Motion to Intervene in this action, filed on December 21, 1972, be and the same is hereby denied as moot.

## APPENDIX A

796.07 Prohibiting prostitution, etc.; evidence; penalties.—

(1) As used in this section, unless the context clearly requires otherwise:

(a) The term "prostitution" shall be construed to include the giving or receiving of the body for sexual intercourse for hire, and shall also be construed to include the giving or receiving of the body for licentious sexual intercourse without hire.

(b) The term "lewdness" shall be construed to include any indecent or obscene act.

(c) The term "assignation" shall be construed to include the making of any appointment or engagement for prostitution or lewdness or any act in furtherance of such appointment or engagement.

(d) The term "prostitution" as used in subdivision (a) shall be construed so as to exclude sexual intercourse between a husband and his wife.

(2) After May 1, 1943, it shall be unlawful in the state:

(a) To keep, set up, maintain or operate any place, structure, building or conveyance for the purpose of lewdness, assignation or prostitution.

(b) To offer, or to offer or agree to secure, another for the purpose of prostitution, or for any other lewd or indecent act.

(c) To receive, or to offer or agree to receive, any person into any place, structure, building or conveyance for the purpose of prostitution, lewdness or assignation, or to permit any person to remain there for such purpose.

(d) To direct, take or transport, or to offer or agree to take or transport, any person to any place, structure or building, or to any other person, with knowledge or reasonable cause to believe that the purpose of such directing, taking or transporting is prostitution, lewdness or assignation.

(3) It shall further be unlawful in the state:

(a) To offer to commit, or to commit, or to engage in, prostitution, lewdness or assignation.

(b) To solicit, induce, entice or procure another to commit prostitution, lewdness or assignation with himself or herself.

(c) To reside in, enter or remain in, any place, structure or building, or to enter or remain in any conveyance, for the purpose of prostitution, lewdness or assignation.

(d) To aid, abet or participate in the doing of any of the acts or things enumerated in subsections (2) and (3) of this section.

(4) In the trial of any persons charged with the violation of any of the provisions of this section, testimony concerning the reputation of any place, structure, building or conveyance involved in said charge, and of the person or persons who reside in, operate or frequent the same, and of the defendant, shall be admissible in evidence in support of the charge.

(5) Any person who shall violate any provision of this section shall be deemed guilty of a misdemeanor of the second degree, punishable as provided in § 775.082 or § 775.083.

### Supplemental Opinion

■ At the time of entry of the Court's oral order in this cause, at the hearing on December 8, 1972, and by the time the Court's Final Judgment was entered on December 26, 1972, counsel for defendants had not submitted to the Court authority by which the Court could have refrained from striking F.S. § 796.-

07, F.S.A., in its entirety because of the lack of a valid severability clause in the statute. The Court's attention has now been directed to the case of Morrison v. Wilson, 307 F.Supp. 196 (N.D.Fla.1969) (three-judge court), which holds that:

"This sub-section, however, may be stricken, without interfering with the operation of the remainder of the statute, nor can it be said that the legislature of Florida would not have enacted this statute had it known this sub-section would be deleted. Apposite here is the reasoning of the Supreme Court of Florida, in State v. Reese, 222 So.2d 732 (1969), in striking from F.S. Sec. 847.011, F.S.A., the word 'immoral' as severable and leaving the rest of the statute intact. This is true, notwithstanding the fact that F.S. Sec. 847.06, F.S.A., when enacted, contained no severability clause. Cramp v. Board of Public Instruction of Orange Co., 137 So.2d 828 (Fla. 1962). Sub-section (2) is severable; the rest of the statute is left intact.

The rest of F.S. Sec. 847.06, F.S.A., consisting of sub-sections (1) and (3), does not fail to provide a reasonably ascertainable standard of guilt, and is not unconstitutional on its face, as contended by Plaintiffs. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); see also State v. Reese, supra." *Id.* at 199.

The Court, being bound by that holding, now deletes that language on page 12 of its December 26, 1972 opinion which discusses the severability question.

The offenses with which petitioners in this action had been charged involved only those portions of F.S. § 796.07, F.S.A., which prohibited "lewdness," as defined in subsection (1)(b) of that statute; no one appearing before this Court has ever contended that any of the petitioners was ever charged with a prostitution violation. The constitutionality of F.S. § 796.07, F.S.A., insofar as it prohibits prostitution was never before the Court. Therefore the Court will judicially delete and sever the definition of "lewdness" in § (1)(b) of F.S. § 796.07,

F.S.A., and will sever and strike the term "lewdness" from every subsection of the statute in which it is found as well as the phrase "or for any other lewd or indecent act," as found in subsection (2)(b) of the statute. Upon consideration of the foregoing, it is

Ordered and adjudged that the third paragraph on page 599 of the Court's Final Judgment dated December 26, 1972 is hereby corrected and amended to read as follows:

Ordered and adjudged that F.S. § 796.07, F.S.A., be and the same is hereby declared to be in violation of petitioners' Fifth and Fourteenth Amendment rights to due process of law insofar as it defines the term "lewdness" in subsection (1)(b) and further as it includes the word "lewdness" in any subsection and finally as it contains the phrase in subsection (2)(b), "or for any other lewd or indecent act," the operation of the remainder of said statute not being otherwise affected by this order,

it being further

Ordered that the balance of the Court's opinion of December 26, 1972 otherwise remain in full force and effect.