**John L. SANDERS and Helen L. Sanders, Appellees,**

**v.**

**C. E. HISER and Louise Hiser, Appellants.**

**No. 72–1522.**

United States Court of Appeals, Eighth Circuit.

Submitted April 9, 1973.

Decided May 2, 1973.

William M. Stocks, Fort Smith, Ark., for appellants.

Sam Sexton, Jr., Fort Smith, Ark., for appellees.

Before GIBSON, BRIGHT and ROSS, Circuit Judges.

ROSS, Circuit Judge.

This is an appeal from a jury verdict entered in favor of Sanders and against the Hisers, awarding $3,600 damages for fraud and deceit in the sale of a one-acre plot of land. This judgment was originally affirmed. by a per curiam opinion of this Court on January 9, 1973. The Hisers submitted a petition for rehearing claiming that this Court erred in failing to decide whether certain evidence was admissible and whether the jurisdiction of the district court had been improperly invoked due to a bad faith allegation of the amount in controversy. After receipt of a response from the Sanders, this Court entered an order on February 28, 1973, granting the petition for rehearing. On rehearing we reverse with directions to dismiss the complaint for lack of subject matter jurisdiction due to a bad faith allegation of amount in controversy.

The complaint alleged diversity of citizenship and that the amount in controversy exceeded $10,000. It further alleged that the Hisers had sold a one-acre tract of ground to the Sanders in February of 1969, and in connection therewith made certain fraudulent misrepresentations concerning platting that tract and a contiguous tract owned by the Hisers and concerning the construction of hard surface streets in the subdivision. The complaint stated that the Sanders constructed a home of a reasonable value of $15,000 on said tract in reliance on these false representations and that they were damaged thereby in the sum of $11,000.-00.

The answer filed by the Hisers specifically denied that the amount in controversy was $10,000 or more and also denied the other substantive allegations of the complaint. Requests for admissions were served upon the Sanders by the Hisers, including no. 35 which stated as follows:

"35. The real property described in the complaint including the value of the residence house has a present value in excess of $10,000.00."

The response thereto by the Sanders was:

"Denied. This statement is untrue."

At trial, although the Sanders had denied that the real property described in the complaint, including the value of the home, had a present value in excess of $10,000, Mr. Sanders twice testified that the value of the property was $11,000. Sanders also testified that if the house and lot had been in a subdivision as contemplated by the Sanders it would be worth between $16,000 and $17,000. Mr. Sanders further testified that he paid $1,450 for the lot and $10,750 for construction of the home. He further testified that the cost of constructing a street was approximately $10 a running foot. The Sanders' expert witness testified that the value of the house situated on the unimproved property was $11,500, but if situated on improved property, it would be $15,500. The defense expert witness testified he had appraised the house in 1971 at $13,000 and that if a seal coat was added on the street, the value of the house would be $13,100.

Hisers' counsel moved for a directed verdict, arguing in part:

> "[A]s I recall, Mr. Sanders testified he figured the lot was worth $11,000.-00; the real estate agent, I believe, said he thought it was worth Eleven five, and the highest price I can recall is somewhere in the neighborhood of $16,500.00. . . .
>
> The point I'm making is that the maximum damage which they have offered or even suggested is $5,500.00, or $5,000.00, which is below the $10,-000.00 jurisdiction of this Court. They have not even attempted to offer proof to justify the allegations of the complaint concerning the jurisdictional amount, and for that we move that the case be dismissed for lack of jurisdiction on the part of the court and for that further reason."

The trial court, while expressing some reservation about the issue, denied the motion. The motion was renewed at the close of all of the evidence and denied. The jury returned a verdict of $3,600.

█ The rule applicable to our determination of whether or not the trial court should have dismissed for lack of jurisdiction is as follows:

> "[I]f, *from the face of the pleadings* it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed *or if, from the proofs*, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). (Emphasis supplied.)

The amount in controversy requirement of 28 U.S.C. § 1332 defines in part the subject matter jurisdiction of the United States District Courts in diversity cases and both the Congress and the Supreme Court have recognized the importance of the requirement. Congress has said that the purpose of the 1958 amendment raising the amount in controversy to $10,000 was to

> "make jurisdiction available in all *substantial* controversies where other elements of Federal jurisdiction are present. The jurisdictional amount should not be so high to convert the Federal courts into courts of big business nor so low as to fritter away their time in the trial of petty controversies." U.S. Code Cong. & Admin.News, S.Rep. No. 1830, 85th Cong., 2d Sess., at p. 3101 (1958). (Emphasis supplied.)

The Supreme Court has indicated that the increase in the amount in controversy limits was intended "to check, to some degree, the rising caseload of the federal courts, especially with regard to the federal courts' diversity of citizenship jurisdiction." Snyder v. Harris, 394 U.S. 332, 339–340, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1968). Indeed, since 1789, when a jurisdictional amount of $500 was fixed by the first Judiciary Act, Congress has raised the amount to $2,000 in 1887, $3,000 in 1911, and finally in 1958, the present figure of $10,000. C. Wright, Law of Federal Courts § 32 at 107 (1971).

. [2] As always, the problem with enforcing any legal doctrine comes in the application of the doctrine to the particular case in which it is raised. As the Supreme Court indicated, "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith." St. Paul Mercury Indemnity Co. v. Red Cab Co., *supra*, 303 U.S. at 288, 58 S.Ct. at 590. The question in this case is therefore whether the Sanders made the allegation of the amount in controversy in good faith. While the courts have taken different approaches to this problem, it is absolutely clear that the "inability of the plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction." *Id.* at 289, 58 S. Ct. at 590.

█ The classic cases where the issue of amount in controversy was resolved against the pleader generally in-

volve those situations where it is possible to tell from the face of the complaint that there is a "legal certainty" that plaintiff cannot recover the jurisdictional amount. Thus, where a complaint prays for damages which are not legally recoverable, dismissal is justified. *See e. g.,* Euge v. Trantina, 422 F.2d 1070, 1074 (8th Cir. 1970). Consequently, the idea that bad faith is the standard for determining the issue is modified by the quasi-objective standard that "[i]t must appear to a *legal certainty* that the claim is really for less than the jurisdictional amount. . . ." St. Paul Mercury Indemnity Co. v. Red Cab Co., *supra,* 303 U.S. at 289, 58 S.Ct. at 590. (Emphasis supplied.) In this case the face of the complaint is not dispositive of the question. Under Arkansas law the Sanders were entitled to the "benefit of their bargain." *See e. g.,* Cockrum v. Pattillo, 246 Ark. 594, 439 S.W.2d 632, 641 (1969). The complaint does not disclose any legal bar to recovery of more than $10,000.

We must therefore proceed to judge this question on the basis of the second test set forth in St. Paul Mercury Indemnity Co. v. Red Cab Co., *supra,* 303 U.S. at 289, 58 S.Ct. 586, which is whether we are satisfied to a legal certainty after examination of the proofs that the plaintiffs never were entitled to recover the amount in controversy, and their claim was therefore colorable.

Courts have looked to the "proofs" before trial, Nelson v. Keefer, 451 F.2d 289, 295–296 (3d Cir. 1971), and after trial, City of Boulder v. Snyder, 396 F.2d 853, 856 (10th Cir. 1968), cert. denied, 393 U.S. 1051, 89 S.Ct. 692, 21 L.Ed. 693 (1969). While the general rule counsels against deciding the issue when the merits of the case and the amount in controversy are intertwined, *see e. g.,* Zunamon v. Brown, 418 F.2d 883, 887 (8th Cir. 1969), there are the "flagrant" cases which justify an exception. *See e. g.,* C. Wright, Law of Federal Courts § 33 at 113 (1971). City of Boulder v. Snyder, *supra,* 396 F.2d 853, is similar to

the instant case and an example of a "flagrant" case.

In *Snyder* plaintiff alleged damages of $25,000 for the wrongful taking of certain water rights caused by a street paving project in front of her residence which resulted in the destruction of a ditch lateral abutting and serving her property. Federal jurisdiction was asserted under the fourteenth amendment. A motion to dismiss was made on the basis of a lack of amount in controversy. The motion was denied, and the case proceeded to trial. Six witnesses, including the plaintiff, testified. The plaintiff testified that her land was worth $15,500 before the taking and $13,500 after the taking. The other witnesses placed the damage at lower amounts. The district court imposed a partial sanction, after awarding damages of $1,500 to the plaintiff and $2,000 to similarly situated intervenors, as follows:

"This action, or the proof in this action, although the allegation is sufficient to give this Court jurisdiction, the proof is so far below it I am not going to award costs to the plaintiff. Each party will stand its own cost." *Id.* at 855.

The Tenth Circuit Court of Appeals reversed and ordered the dismissal of the claim saying:

"[W]hen, as here, a failure of proof of damage is so complete as to dicate the conclusion that resort to federal jurisdiction has been abused the proper disposition of the suit is dismissal.

[A] plaintiff's good faith in choosing the federal forum is vulnerable at any time during the trial as well as prior thereto, and if it appears that a plaintiff never was entitled to recover the jurisdictional amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit must be dismissed. . . ." *Id.* at 856.

This case has obvious similarities to *Snyder,* not the least of which was a "complete failure" of proof of damages

in the jurisdictional amount. As the Hisers' counsel indicated in his motion to dismiss, there was never even a "suggestion" of proof relating to damages approximating $10,000. The most expansive proof was the lay testimony of Mr. Sanders establishing a present value of some $11,000 and a value absent the purported fraud between $16,000 and $17,000. The Sanders' expert witness testified to a range lower than Mr. Sanders. Therefore, this case does not present the typical factual situation where proof was offered which might conceivably, but doubtfully, establish damage approximating the required amount in controversy. Rather, this case demonstrates a total unconcern with offering *any* proof which might conceivably establish damage related to the required amount.

An equally telling consideration is the Sanders' changing posture throughout this case with regard to damages. In their complaint, the Sanders seemingly pleaded that their home should have reasonably been valued at $15,000, but due to the fraud, damage was sustained in the amount of $11,000. Thus it was fair their home and lot was less than $5,000. to assume that the Sanders would attempt to prove that the present value of Indeed before trial the Sanders *specifically denied* that their home and lot had a present value in excess of $10,000. But at trial, Mr. Sanders not only completely contradicted his denial and affirmatively stated that his home did have a present value in excess of $10,000, but also presented expert testimony to substantiate their claim that the home had a present value in excess of $10,000. The only possible reason for the pretrial denial that the home did have a value in excess of $10,000 would be to strengthen the claim that damages did exceed the required amount. Since Sanders proved themselves that their denial was not candid, such a contradiction argues strongly in favor of the proposition that there was a lack of good faith and that dismissal was required.

 The subject matter jurisdiction of the federal courts must be strictly guarded to insure that the direction which Congress has provided will be followed. While diversity plaintiffs should not have their complaints judged by whether a jury or a judge awards an amount equal to the amount in controversy requirements, the flagrant case, where "from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction," St. Paul Mercury Indemnity Co. v. Red Cab Co., *supra,* 303 U.S. at 289, 58 S.Ct. at 590, requires dismissal.

Reversed and remanded with directions to dismiss for lack of jurisdiction.