Patsy A. CLARK, d/b/a the Lariat Club, Plaintiff,

v.

The CITY OF FREMONT, NEBRASKA, a municipal corporation, and Arthur L. Peters, Defendants.

No. CV73-L-263.

United States District Court, D. Nebraska.

April 12, 1974.

William G. Line, Kerrigan, Line & Martin, Fremont, Neb., for plaintiff.

Lyle B. Gill, City Atty., Fremont, Neb., for defendants.

## MEMORANDUM OF DECISION

BENSON, Chief Judge.

On September 11, 1973, Defendant City of Fremont, passed Ordinance No. 2768:

"AN ORDINANCE OF THE CITY OF FREMONT, NEBRASKA, TO AMEND CHAPTER 3, ALCOHOLIC BEVERAGES, OF THE MUNICIPAL CODE, BY THE ADDITION OF SECTION 3–17 TO PROVIDE GROUNDS FOR REVOCATION AND SUSPENSION OF RETAIL LICENSES, TO PROVIDE FOR NOTIFICATION AND HEARING, AND TO PROVIDE FOR AN EFFECTIVE DATE.

BE IT ORDAINED BY THE MAYOR AND CITY COUNCIL OF THE CITY OF FREMONT, NEBRASKA:

SECTION I. That Chapter 3, Alcoholic Beverages, of the Municipal

Code be amended by the addition of Section 3–17 which shall read as follows:

Section 3–17. *Grounds for Revocation or Suspension.* A retail license to sell or dispense alcoholic liquors, which this Council is legally empowered to revoke, may be either revoked or suspended by the City Council whenever it shall find, after notice and hearing as provided by law, that the holder of any such license has violated any of the provisions of said Nebraska Control Act, or of this chapter, or rule or regulation of the Nebraska Liquor Control Commission, or any statutory provision or ordinance of the City now existing or hereafter passed, enacted in the interest of good morals and decency, or for any one or more of the following causes:

1. The licensee, his manager or agent in charge of the premises licensed, has been convicted of or has plead guilty to a felony under the laws of the State of Nebraska, or of any other state of the United States.

2. The licensee, his manager or agent in charge of the premises licensed, has been convicted of or has plead guilty to being the proprietor, manager or agent in charge of a gambling house, or of pandering or other crime or misdemeanor opposed to decency and morality.

3. The licensee, his manager or agent in charge of the premises licensed, has been convicted of or plead guilty to violation of any federal or state law concerning the manufacture, possession or sale of alcoholic liquors.

4. The licensee either swore falsely to any question in his application for said license or has failed to comply with the statements and representations made by the answer to any question or questions in said application, or has failed to perform in accordance with any other state-ment or representation or keep any promise, oral or written, made to the Council, in connection with such licensee's request for said license.

5. The licensee, his manager or agent in charge of the premises licensed, shall have forfeited bond to appear in court to answer charges for any one of the violations of law or ordinance referred to in this section.

6. It shall be the cause for revocation or suspension as herein provided if the licensee, his manager or agent, shall allow any live person to appear, or have reasonable cause to believe that any live person shall appear in any licensed premises in a state of nudity, to provide entertainment, to provide service, to act as hostess, manager or owner, or to serve as any employee in any capacity.

For the purpose of this section, the term 'nudity' shall mean the showing of the human male or female genitals, pubic area or buttocks with less than a full opaque covering. Furthermore, the term 'nudity' shall mean the showing of that area of the human female breast from one inch above the breast nipple, the breast nipple, and that portion of the breast four inches below the breast nipple with less than a full opaque covering. In no event shall a female covered by this Section appear without a brassiere or halter, opaque, covering at least four inches of the nipple area of her breasts.

7. Upon a signed formal complaint of an alleged violation of this ordinance filed with the City Clerk of the City of Fremont, Nebraska, the Mayor and City Council of the City of Fremont will conduct a hearing on the matter at its next regular meeting, provided that the complaint is filed within ten days prior to said meeting, otherwise the matter will be held over until the

following regular Council Meeting. It shall be the duty of the City Clerk of the City of Fremont, Nebraska, to notify the retail liquor license holder, by United States mail, postage prepaid, of said alleged violation and hearing date.

SECTION II. That all of Chapter 3, Alcoholic Beverages of the Municipal Code of the City of Fremont, Nebraska, except as heretofore amended, is to remain in full force and effect.

SECTION III. That this ordinance shall be in full force and effect from and after its passage, approval and publication as provided by law."

■ Defendant, Arthur L. Peters, is the Mayor of Fremont, and as such is invested with the superintending control of all officers and affairs of the City. Plaintiff, Patsy Clark, is a holder of a Class C license to sell alcoholic liquor by the drink issued by the Nebraska Liquor Control Commission to her as an individual doing business as the Lariat Club. Entertainment at the club includes topless dancing, and other acts, which fall within the ordinance's proscriptions. Plaintiff challenges the constitutional validity of Ordinance No. 2678, contending that certain language contained in the first paragraph of Section 3–17, and subsections 2 and 4 thereof, violate the Due Process Clause of the Fourteenth Amendment in that said language is vague and ambiguous and provides no ascertainable standard of guilt. Plaintiff further contends that subsection 6 abridges the freedom of expression guaranteed by the First and Fourteenth Amendments in prohibiting "nudity" as defined therein, and that subsection 6 is also unconstitutionally discriminatory in that film and magazine presentations of persons in a state of nudity as defined in the ordinance are not proscribed.

Plaintiff prays for a judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., declaring the entire ordinance invalid, arguing that the ordinance contains no severability clause, and that if any of the provisions of the ordinance are invalid, the whole of the ordinance should be struck.[1]

The complaint was filed on September 27, 1973, and a temporary restraining order was issued by this court on September 28, 1973, enjoining the defendants and their agents from enforcing Ordinance 2768 against the plaintiff. Pursuant to stipulation of the parties, it was further ordered on October 1, 1973, that the temporary restraining order was to continue in effect until a decision on the merits was reached by the court. The defendant made it clear at the pre-trial conference, as evidenced by the pre-trial order, that unless restrained by order of this court, defendants would enforce the ordinance and might revoke plaintiff's liquor license after notice and hearing if it was established to defendant's satisfaction that plaintiff violated the ordinance. Willful violation of the ordinance would subject plaintiff to prosecution for a misdemeanor with a maximum penalty of $100.00 fine for each offense. Trial to the court was held on February 26, 1974.

## JURISDICTIONAL PROBLEMS

■ Before considering the merits of plaintiff's contentions, an examination of other issues raised by the parties is necessary. First, defendant challenges this court's jurisdiction, contending plaintiff has failed to meet the federal question jurisdictional requirement of $10,000.00 under 28 U.S.C.A. § 1331(a). Plaintiff states that enforcement of the ordinance will damage plaintiff in excess of $10,000.00 in that since topless entertainment has been provided, plaintiff's

---

1. An allegation of a denial or rights guaranteed under specific constitutional provisions is sufficient to raise a question appropriate for declaratory relief under 28 U.S.C.A. § 2201 et seq. See Block v. Thompson, 472 F.2d 587 (5th Cir. 1973) ; Parks v. Allen, 409 F.2d 210 (5th Cir. 1969) ; and Barnes v. Merritt, 376 F.2d 8 (5th Cir. 1967), all of which considered due process—liquor license questions in light of constitutional provisions pursuant to 28 U.S.C.A. § 2201 et seq.

average monthly gross profit has increased from $3,800.00 to $9,000.00. Defendant answers that there is no showing that the net profit was in excess of $10,000.00. Although the relevancy of net profit to possible damages for jurisdictional purposes is doubtful, it is incumbent on the plaintiff to allege a claim that satisfies the required jurisdictional amount. Kinsey v. General Motors Acceptance Corporation, 359 F. Supp. 36 (D.N.D.1973). Plaintiff has met this requirement.

> "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 at 288, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

See also Sanders v. Hiser, 479 F.2d 71 (8th Cir. 1973); Lind v. Canada Dry Corporation, 283 F.Supp. 861 (D.Minn. 1968). In this case, plaintiff has made her claim in good faith, and it does not appear to a legal certainty that plaintiff's claim is less than $10,000.00. The Court finds that plaintiff's net income for 1973 from the Lariat Club's operation was $15,243.93.

■ Secondly, defendant contends, in effect, that the decision of California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L. Ed.2d 342 (1972), somehow precludes this court from taking jurisdiction of the case, either on a basis of res judicata as the LaRue decision upheld a nearly identical statute, or that the LaRue decision removed the question from federal courts insofar as it upheld a similar statute on the basis of a very broad

power to control the sale of liquor given to the states under the Twenty-First Amendment. The LaRue decision upheld regulations promulgated by the California Department of Alcoholic Beverage Control which prohibited certain sexually explicit live entertainment or films in licensed bars and night clubs. It was held that in view of the states' broad authority to control intoxicating liquors under the Twenty-First Amendment, the challenged regulations did not, on their face, violate the Federal Constitution, notwithstanding that the regulations proscribed some acts which were not obscene and which were within the limits of the First and Fourteenth Amendments' protection. The Court did consider evidence taken at public hearing relative to sexually explicit entertainment, noting that at "topless" and "bottomless" bars and nightclubs, sexual conduct had taken place between customers and entertainers, and that prostitution, rape, indecent exposure, and assaults on police officers had taken place on or immediately adjacent to such premises. In view of this, the Supreme Court felt that the department's choice of a prophylactic solution to the problem was neither irrational or unreasonable.

Res judicata in no sense precludes this Court from considering the constitutional issues presented for none of the doctrine's elements—identity of parties, or even identity of issues—is present. 1B Moore's Federal Practice, ¶¶ 0.405, 0.-410, 0.411.

■ Defendant's second argument, raised at trial, in this regard is tantamount to stating that liquor licensees are no longer protected by the Constitution as the Twenty-First Amendment precludes its application;[2] that any questions concerning liquor licenses cannot be termed federal questions, but are

---

2. LaRue has received such broad application from at least one court. A three judge district court panel stated:

> "The right of the state to promote the common good, to regulate or prohibit the traffic in ardent spirits injurious to its cit-

izens and calculated to produce idleness, vice and debauchery, cannot be questioned under the Fourteenth Amendment or any other provision of the Constitution." National Railroad Passenger Corporation v. Miller, 358 F.Supp. 1321 (D.Kan.1973).

state questions. This court rejects any such broad interpretation of *LaRue*, as the decision in its own words recognizes that the Twenty-First Amendment does not supersede all other provisions of the United States Constitution in the area of liquor regulations. 409 U.S. at 115, 93 S.Ct. 390. In Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L. Ed.2d 515 (1971), the Due Process requirements of notice and hearing were held applicable to a Wisconsin liquor-related statute. As stated in Hostetter v. Idlewild Liquor Corp., 377 U.S. 324, at 332, 84 S.Ct. 1293, at 1298, 12 L.Ed.2d 350 (1964):

> "Both the Twenty-first Amendment and the Commerce Clause are parts of the same Constitution. Like other provisions of the Constitution, each must be considered in light of the other, and in the context of the issues and interests at stake in any concrete case." quoted in 409 U.S. at 115, 93 S.Ct. at 395.

Finally, in Paladino v. City of Omaha, 471 F.2d 812 (8th Cir. 1972), it was held that an action by a bar owner against a city to enjoin enforcement of an order of the city council revoking his license for violation of a city ordinance prohibiting topless and other nude entertainment in bars did present a federal question of constitutional proportion.[3]

Plaintiff also raises an issue which touches on the jurisdiction of this court in contending that the City of Fremont was without power under state law to pass Ordinance No. 2768. Neb.R.S. § 53–116 provides:

> "The power to regulate all phases of the control of the manufacture, distribution, sale, and traffic in alcoholic liquors, except as specifically delegated in this act, is hereby vested exclusively in the commission."

This regulatory power is delegated to the municipalities of Nebraska in Neb.R.S. § 53–147, which provides:

> "The governing bodies of cities and villages are hereby authorized to regulate by ordinance, not inconsistent with the provisions of this act, the business of all beer licensees carried on within their corporate limits."

It is contended that § 53–147 does no more than authorize cities to promulgate ordinances for the purpose of regulating the *business* of *beer* licensees. Plaintiff argues that Ordinance No. 2768 "does not attempt to regulate the business of the licensee but attempts to regulate the type of entertainment furnished by the licensee." Secondly, it is argued that defendant can only regulate those businesses which are limited to selling beer, and 53–147 cannot be read to authorize the regulation of a license to sell liquor by the drink.[4] It would seem that where a question under state law exists, especially if it would preclude a decision on the federal questions presented, a summary judgment of dismissal may be appropriate.[5]

---

3. The following decisions have either explicitly or implicitly rejected the contention that *LaRue* stands for the proposition that state liquor regulations are free from any Constitutional restrictions. Block v. Thompson, 472 F.2d 587 (5th Cir. 1973); Peto v. Cook, 364 F.Supp. 1 (S.D.Ohio 1973), aff'd 42 U. S.L.W. 3480 (U.S. Feb. 26, 1974); Cherbonnie v. Kugler, 359 F.Supp. 256 (D.N.J. 1973); Escheat, Inc. v. Pierstorff, 354 F. Supp. 1120 (W.D.Wis.1973); McCue v. City of Racine, 351 F.Supp. 811 (E.D.Wis.1972).

4. As relevant to this decision, Nebraska has eight classes of liquor retailers licensees set forth under R.S.Neb. § 53–124(5). Classes A, B, and F provide for the sale of beer only, whereas Classes C, D, E, G, and H provide for the sale of alcoholic liquors. "Alcoholic liquor" is defined in R.S.Neb. § 53–103(6) as including "the four varieties of liquor above defined, alcohol, spirits, wine, and beer, and every liquid or solid, patented or not, containing alcohol, spirits, wine, or beer, and capable of being consumed as a beverage by a human being."

5. In Schumacher v. Schmidt, 479 F.2d 1248 (8th Cir. 1973), the Eighth Circuit affirmed an order granting summary judgment of dismissal where a civil rights action was brought. The action was primarily based upon a refusal of the City of Huron, South Dakota, to submit the plaintiff's application for a liquor license for approval to the appropriate state authorities. The City's deci-

On the other hand, if it is unclear that the ordinance is invalid under state law, it might be appropriate for this court to abstain.[6] Chicago v. Fieldcrest Dairies, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355 (1942).

 Whatever the validity of a case for dismissal on the state law question in cases where a decision on state law would preclude reaching federal questions, it is not applicable here, for it is clear under Nebraska law that the City had the authority to pass the ordinance in question.[7] In Phelps, Inc. v. City of Hastings, 152 Neb. 651, 42 N.W.2d 300 (1950), the Supreme Court of Nebraska

---

sion was based upon a belief that under state law, they had already issued the maximum amount of licenses under state law for a city of its size. The plaintiff claimed that the statute was misinterpreted. The Eighth Circuit stated that "[t]he matter of statutory interpretation is for the state courts." at 1250.

6. In arguing that a rather explicit Nebraska Supreme Court case, Phelps v. City of Hastings, 152 Neb. 651, 42 N.W.2d 300 (1950), which upheld under state law a city's power to regulate the business of an alcoholic liquor license, may not be decided the same way today, it seems that the plaintiff is asking this court to examine and interpret unclear or conflicting case and statutory law. It appears that this would be an appropriate case for abstention if indeed Nebraska law was uncertain, and a state decision might preclude a federal question decision by this court. In Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), the Supreme Court considered the abstention doctrine in a liquor license-due process context:

"It is suggested that the three-judge court should have stayed its hand while the aggrieved person repaired to the state courts to obtain a construction of the Act or relief from it. The fact that Wisconsin does not raise the point does not, of course, mean that it lacks merit. Yet the suggestion is not in keeping with the precedents.

Congress could, of course, have routed all federal constitutional questions through the state court systems, saving to this Court the final say when it came to review of the state court judgments. But our First Congress resolved differently and created the federal court system and in time granted the federal courts various heads of jurisdiction, which today involve most federal constitutional rights. Once that jurisdiction was granted, the federal courts resolved those questions even when they were enmeshed with state law questions. In 1941 we gave vigor to the so-called abstention doctrine in Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971. In that case an authoritative resolution of a knotty state law question might end the litigation and not give rise to any federal constitutional claim. Id., at 501, 61 S.Ct. 643. We, therefore, directed the District Court to retain the suit pending a determination by a state court of the underlying state law question. We applied the abstention doctrine most recently in Fornaris v. Ridge Tool Co., 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174, where a relatively new Puerto Rican statute, which had not been authoritatively construed by the Commonwealth's courts, 'might be judicially confined to a more narrow ambit which would avoid all constitutional questions.' We ordered the federal courts to stay their hands until the Puerto Rican courts had spoken. Speaking of Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68, we noted that the 'three-judge federal court should not have proceeded to strike down an Alaska law which, if construed by the Alaska Supreme Court, might be so confined as not to have any constitutional infirmity.' Id. at 43, 91 S.Ct. at 157." at 437, 438, 91 S.Ct. at 510.

Further, in view of the broad power of the states to regulate liquor traffic, the case for abstention in cases where state liquor regulations, or case law thereon, is uncertain or ambiguous, is stronger than in other areas of state regulatory power. See Cherbonnie v. Kugler, 359 F.Supp. 256 (D.N.J.1973).

7. "But the abstention rule only applies where 'the issue of state law is uncertain.' Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50. Thus our abstention cases have dealt with unresolved questions of state law which only a state tribunal could authoritatively construe. Reetz v. Bozanich, supra; City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562.

In the present case the Wisconsin Act does not contain any provision whatsoever for notice and hearing. There is no ambiguity in the state statute. There are no provisions which could fairly be taken to mean that notice and hearing might be given under some circumstances or under some construction but not under others. The Act on its face gives the chief of police the power to do what he did to the appellee. Hence the naked ques-

considered the question of whether a city had the authority under state law to regulate the activities of a Class "D" licensee authorized to distribute for consumption off the premises "alcohol, including beer". The specific question concerned the validity of a city ordinance requiring the sale of beer to be in a room separate from the room in which alcoholic beverages other than beer were sold. The Court stated:

"We have no hesitancy in saying, under such circumstances, that the sale of alcoholic liquors on the premises described in the license would include the sale of beer, since the latter is included within the term 'alcoholic liquors' by statutory definition." at 302, 303.

The court stressed that "[u]nder the [Liquor Control] act the regulation of the beer business is primarily in the hands of named political subdivisions of the state." at 303. Although the case was considered as an examination of whether or not the city ordinance was inconsistent with the provisions of the Liquor Control Act, the court stated that "the primary power to permit the sale of beer and alcoholic liquors other than beer in the same room or location rests with the city by virtue of its delegated authority to regulate the sale of beer." at 304. This power was not limited solely to the actual dispensing of beer, but,

"[g]enerally it means that the mode and manner of conducting the business may be controlled. In so doing, the regulatory body may ordinarily consider the character of those operating the business, the place and hours of operation, the type of building and the sanitary condition thereof, the number of places to be licensed, and any other reasonable regulation that is not prohibitory. A city with authority delegated to it to regulate a licensed business, not inconsistent with the licensing statute, may properly impose stricter regulations than the statute, without being inconsistent with such statute." at 303 (citations omitted).

Moreover, the Supreme Court of Nebraska has recently upheld an Omaha ordinance which prohibited "topless" dancing in liquor establishments. Major Liquors, Inc. v. City of Omaha, 188 Neb. 628, 198 N.W.2d 483 (1972). Plaintiff takes the position that Major Liquors is not in point, arguing that the city's power under state law to regulate "nudity" in establishments dispensing alcohol was not in issue. However, the court in upholding as valid the ordinance in question, considered the issue in light of both the state power, and delegated municipal power thereunder, to regulate liquor sales.

" 'Regulations, both municipal and statutory, may properly prohibit the use of attractions or other amusements which may make places where intoxicating liquors are sold attractive to the loiterer. *It is not a question, under such regulations, of whether the amusements are of such character as to annoy or disturb persons living nearby or doing business in the vicinity, but whether the prohibited acts will tend to attract or entice people into the place where the liquors are sold.*' " quoting from 45 Am.Jur.2d, Intoxicating Liquors, at 485, § 285, p. 682. (emphasis added).

It cannot be seriously disputed, in light of *Phelps* and *Major Liquors*, that a city,

tion, uncomplicated by an unresolved state law, is whether that Act on its face is unconstitutional. As we said in Zwickler v. Koota, 389 U.S. 241, 251, 88 S.Ct. 391, 397, 19 L.Ed.2d 444, abstention should not be ordered merely to await an attempt to vindicate the claim in a state court. Where there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim. *Id.*, at 250, 251, 88 S.Ct. 391. We would negate the history of the enlargement of the jurisdiction of the federal district courts, if we held the federal court should stay its hand and not decide the question before the state courts decided it." *Constantineau*, at 438, 439, 91 S.Ct. at 511.

under Nebraska law, has authority to regulate a liquor licensee's choice of entertainment offered to his customers. The court in *Major Liquors* made clear that the ordinance in question was a valid assertion of police power over activity *incident* to the dispensing of alcoholic liquors. The Nebraska Supreme Court phrased the question as follows:

"Is the restriction against females dancing when 'topless' or seminude an unreasonable regulation of business engaged in dispensing alcoholic liquors? We conclude that it is not. The prime objection of plaintiffs to the ordinance, as appears from this pleading and evidentiary exhibits, is that the banning of such entertainment reduces their patronage and adversely affects their income. This confesses that the object of this type of entertainment is to lure customers and induce them to indulge in the consumption of alcoholic liquors." at 486, 487.

" 'When nudity is employed as sales promotion in bars and restaurants, nudity is conduct. As conduct, the nudity of employes is as fit a subject for governmental regulation as is the licensing of the liquor dispensaries and the fixing of their closing hours.' " at 487, 488, quoting from City of Portland v. Derrington, 253 Or. 289, 451 P.2d 111 (1970), cert. den. 396 U. S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177.[8] State Law does not bar this Court's decision on the federal questions presented. .

8. The fact that the Nebraska Supreme Court expressed the regulation of entertainment in liquor establishments as incident to state or municipal power over the sale of liquor disposes of an argument raised by plaintiff at trial; Namely, that the ordinance, while not falling within the Liquor Control Act, may be examined in terms of an attempted assertion of police power over the welfare and morals of its citizens. As such, under pure obscenity decisions, which do not consider a balancing between the First Amendment and the Twenty-first Amendment per *LaRue*, but which would stand the ordinance alone against the First Amendment, would require the ordinance to be held invalid. *See*

## THE MERITS

■ 1. *Vagueness*: This court holds that those parts of Section 3–17 of Ordinance No. 2768, and part of subsections 2 and 4 thereof, hereinafter specifically noted, are void for vagueness in that the grounds for revocation of liquor licenses are based upon words incapable of intelligible or precise meaning; that these provisions subject liquor licensees to possible arbitrary, and wholly discretionary, administrative decisions as to what constitutes a ground for revocation; and that they provide no ascertainable standards against which a liquor licensee could apply contemplated conduct.

In balancing the Twenty-first Amendment and the Due Process Clause of the Fourteenth Amendment, this court can see no persuasive argument that the power given to the states under the Twenty-first Amendment will be diluted or frustrated in any way in requiring liquor regulations to comport with the Due Process Clause, especially the requirements of ascertainable standards and notice therein. Decisional law, both pre- and post-*LaRue*, are in accord where liquor regulations are concerned. A line of Fifth Circuit decisions is particularly expressive of the principle that although the power of municipal authorities to regulate liquor traffic is broad, they are not freed from due process requirements in granting liquor licenses, and thus are not to be allowed to exercise an uncontrolled discretion in regard to liquor licensing on the ground that such licenses are privileges. Block v.

Salem Inn, Inc. v. Frank, 364 F.Supp. 478 (E.D.N.Y.1973), which dealt with the application of a provision prohibiting topless entertainment in bars. However, the provision was part of an obscenity ordinance which prohibited "across-the-board" any baring of breasts in public places or anywhere. The Court invalidated the ordinance as an assertion of police power which was considered to violate the First Amendment's freedom of expression insofar as dancing was considered a form of expression. The court felt the Twenty-first Amendment and *LaRue* were inapplicable where the ordinance was directed not at liquor control but at obscenity in general. .

Thompson, 472 F.2d 587 (5th Cir. 1973); Mayhue's Super Liquor Store, Inc. v. Meiklejohn, 426 F.2d 142 (5th Cir. 1970); Parks v. Allen, 426 F.2d 610 (5th Cir. 1970); Parks v. Allen, 409 F. 2d 210 (5th Cir. 1969); Barnes v. Merritt, 376 F.2d 8 (5th Cir. 1967); Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964).

"The public has the right to expect its officers to observe prescribed standards and to make adjudications on the basis of merit. The first step toward insuring that these expectations are realized is to require adherence to the standards of due process; absolute and uncontrolled discretion invites abuse." Hornsby, at 610.

"If it develops that no ascertainable standards have been established by the Board of Aldermen by which an applicant can intelligently seek to qualify for a license, then the court must enjoin the denial of licenses under the prevailing system and until a legal standard is established and procedural due process provided in the liquor store licensing field." Hornsby, at 612.

"However even in the regulation of the sales of liquor, arbitrary or unreasonable licensing procedures are in violation of the due process and equal protection clauses of the fourteenth amendment." Parks, 409 F.2d at 211.

In *Block*, the Fifth Circuit while noting that the power to regulate liquor was broad, invalidated a city ordinance concerning the transfer of a licensed liquor store to another location within the city where the public hearing provisions of the ordinance failed to set forth sufficiently specific objective criteria for allowing or disallowing a transfer.[9]

Specifically, plaintiff attacks Ordinance No. 2768, insofar as it subjects plaintiff's license to revocation should plaintiff:

(1) violate "any statutory provision or ordinance of the city now existing or hereafter passed, enacted in the interest of *good morals and decency*." Section 3–17 (emphasis added).

(2) or be convicted or plead guilty to any "crime or misdemeanor opposed to *decency and morality*". Subsection 2. (emphasis added).

(3) fail to "perform in accordance with any other statements or representation or keep any promise, oral or written, made to the Council, in connection with such licensee's request for said license". Subsection 4.

We agree with plaintiff's contention that "such slippery words can be adopted to fit the mood of the trier of fact and lead to any result which might be momentarily desired from time to time.[10] A recent three judge district court decision, McCright v. Olson, 367 F.Supp. 937 (D.N.D.1973), bears on this issue:

"To permit the Attorney General to prevent theater operation on the basis of the applicant being an 'improper

---

9. Other jurisdictions, bolstered by the Supreme Court decisions of Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), and Joseph E. Seagram & Sons, Inc. v. Hostetter, 384 U.S. 35, 86 S. Ct. 1254, 16 L.Ed.2d 336 (1966), have taken the Fifth Circuit position concerning the application of the due process clause to liquor regulations. Cherbonnie v. Kugler, 359 F. Supp. 256 (D.N.J.1973); Escheat, Inc. v. Pierstorff, 354 F.Supp. 1120 (W.D.Wis. 1973); McCue v. City of Racine, 351 F. Supp. 811 (E.D.Wis.1972); Misurelli v. City of Racine, 346 F.Supp. 43 (E.D.Wis.1971).

10. Words such as "morals" and "decency" are indeed "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). "In some States the phrase 'injurious to public morals' would be likely to punish acts which it would not punish in others because of the varying policies on such matters as use of cigarettes or liquor and the permissibility of gambling. This led to the inquiry as to whether the statute attempts to cover so much that it effectively covers nothing." Musser v. Utah, 333 U.S. 95, 68 S.Ct. 397, 92 L.Ed. 562 (1948).

person', or 'for any other reason it is an improper place', would be to allow him to arbitrarily exercise his power devoid of ascertainable standards to be applied in a determination of the meaning of 'improper'.

"License refusal or revocation based on such 'standards' presents a clear possibility of overbroad application of the statute to activities protected by the First and Fourteenth Amendments." at 944.

The ordinance as phrased would require an extensive search of municipal and state codes by a liquor licensee to determine which crimes are contrary to "morals" or "decency"; the determination as to what standards he must then follow to avoid license revocation would be based on a guess—a guess subject to expansion by the City Council should it so desire. These words, as well as the general coverage of subsection 4, give the Fremont authorities absolute discretion in determining whether plaintiff has complied with the requirements of Ordinance No. 2768. Subsection 4 subjects plaintiff to a one-sided interpretation of the representations made at the time of application, and is so broad as to fail to give plaintiff adequate notice of what constitutes compliance. The language in dispute must fall.[11]

■ 2. *Proscription of nudity:* Subsection 6 is invalid in part in that it will be applied to proscribe perform-

ances to which First Amendment protections are applicable, for although it is explicit in its prohibitions, it fails to provide for prompt judicial review of these performances in the event revocation of licenses are based thereon.

LaRue and Paladino v. City of Omaha, 471 F.2d 812 (8th Cir. 1972), defendant argues, are decisive of the issue as to subsection 6. In *Paladino*, the ordinance which was upheld proscribed "nudity" in liquor establishments.

" 'For the purposes of this subsection, the term "nudity" shall mean the showing of the human male or female genitals, pubic area or buttocks or the human female breast including the nipple or any portion below the nipple with less than a full opaque covering; provided, however, for entertainment purposes only with less than a full opaque covering, shall mean or include the wearing of pasties.' Omaha, Neb., Ordinance No. 18.04.070(6) (1971)." at 813.

The Omaha ordinance is almost identical to subsection 6 here in question. However, the Eighth Circuit clearly did not state that all "sexually oriented performances", or non-sexually oriented performances, when breasts are bared incidentally to a performance, can be permissibly barred under the state's broad power of liquor regulation to the elimination of First Amendment protections. Rather, the Eighth Circuit sug-

11. The Supreme Court in Joseph E. Seagram & Sons, Inc. v. Hostetter, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966) considered a state liquor statute under constitutional attack based on vagueness. Although the Court concluded the disputed language was not so vague as to be constitutionally invalid, at 48, 49, it made clear that even liquor regulations must not be so vague as to fail to give the licensee notice of what constitutes grounds for revocation. In Cherbonnie v. Kugler, 359 F.Supp. 256 (D.N.J.1973), a federal court considered certain New Jersey statutes and regulations which in effect proscribed "topless" dancing in barrooms pursuant to language which interdicted "lewdness and immoral activity" at licensed establishments which served alcoholic beverages. Although the Court abstained, retaining juris-

diction, in view of a large number of pending state prosecutions and civil actions, and in view of the fact that the sale of liquor is particularly subject to state control, the following language is noteworthy:

"Significantly, *LaRue* is distinguishable from the instant case. In *LaRue*, the Supreme Court concluded that the California liquor regulation was constitutional under the twenty-first amendment. The regulation there under consideration was drafted with great specificity. On the other hand, New Jersey ABC Rule 5, as well as the challenged statutes, prohibits 'lewdness' and 'immoral activity.' No definition of, or constitutional standard for, these terms is present either in the ABC Regulations or in the New Jersey Statutes." at 260.

gested that such questions be left to an *ad hoc* determination as to whether a disputed liquor ordinance is over-broad in its application.

"We understand the rule in *LaRue* to be that under the twenty-first amendment, the state (or city) may proscribe sexually oriented performances, not otherwise obscene or illegal, in establishments which it licenses to sell liquor by the drink. *And unless we can say that the determination made by the City as to which sexually oriented performances are barred is in fact 'irrational', we cannot hold that the ordinance on its face violates the Federal Constitution, especially in view of the presumption in favor of the regulation required by the twenty-first amendment.* We are unwilling to hold, as a matter of law, that the City's determination was 'irrational' and therefore affirm the judgment of the district court in dismissing Paladino's complaint." at 814 (emphasis added).

Likewise, *LaRue* cannot support a contention that, under the Twenty-first Amendment, liquor regulations are not subject to any First Amendment protections. This argument has been answered by Cook v. Peto, 42 U.S.L.W. 3480 (U.S. Feb. 26, 1974), which summarily affirmed Peto v. Cook, 364 F.Supp. 1 (S.D.Ohio 1973):

"It is important, however, to note the limited reach of *LaRue*. It is applicable only where certain types of live entertainment or movies, in the context of licensed bars or nightclubs, 'partake more of gross sexuality than of communication'; it reaches only those situations which can be characterized as 'Bacchanalian revelries' and does not purport to proscribe '. . . . a performance by a scantily clad ballet troupe in a theater.' 409 U.S. at 118, 93 S.Ct. at 397; Escheat, Inc. v. Pierstorff, 354 F.Supp. 1120, 1124–1126 (W.D.Wis.1973); also see Paladino v. City of Omaha, 471 F.2d 812, 814 (C.A. 8, 1972). . . . ."

"The operative regulation of the defendant Department of Liquor Control is, therefore, of too broad a scope to come within the limited holding of *LaRue*. It seeks to regulate not merely the forms of live entertainment which were before the Court in that case; the Ohio regulation also attempts to prohibit the sale of certain printed matter by providing that: 'No permit holder . . . shall knowingly or willfully allow in . . . his . . . premises . . . any indecent, profane or obscene . . . *literature, pictures or advertising materials* . . .' (emphasis supplied). The regulation is facially applicable to all such printed matter which may come within the recently adopted obscenity standards, and not merely to live demonstrations involving 'gross sexuality' or 'bacchanalian revelries.' It is, in addition, fully applicable to carry-out stores of the type now before us, as well as to on-premise consumption outlets. There is, however, no legislative findings, as were before the Court in *LaRue,* that the conjunction of the purchase of alcohol and purportedly obscene magazines for consumption on private property leads to a higher incidence of antisocial or otherwise undesirable behavior."

"For all these reasons, the delicate tension that generally exists in this area between the First and Twenty-first Amendments in the instant case, unlike *LaRue,* shifts in favor of plaintiff's presumptively expansive First Amendment rights."

"Therefore, to the extent O.R.C. § 4301.03 recognizes that the Department of Liquor Control has, under *LaRue,* some role to play in regulating obscenity, it is constitutional. To the extent, however, that the Department through Regulation LCC–1–52 attempts to exceed permissible standards of regulation over materials which are arguably protected by the First Amendment, as by taking administrative action against its licen-

sees who possess printed matter which has not been previously found to be obscene at an adversary hearing before a competent judicial tribunal, it is unconstitutional and will be enjoined." 364 F.Supp. at 3, 4 (citations omitted in part).

*Peto* points to two guides as relevant to this case in determining whether the balance has shifted in favor of First Amendment rights: (1) The grossness of the activity which the statute proscribes, and (2) the evidence presented supporting the need for the prophylactic solution chosen by the legislature or administrative body. Hence, a brief description of the evidence before the Court is necessary.

The City presented its evidence through two of its police officers, and two high school senior girls who had on occasion participated in the club's "Amateur Night". The officers testified to, and the Court finds there was, activity which is certainly within the City's power to proscribe under *LaRue,* insofar as the officers observed on several occasions performances which included simulated sexual activity with a stuffed animal, exposure of pubic hair and anus, and the rubbing of a feather and other objects over the genital area. *LaRue* upheld a statute which specifically proscribed fondling of genital areas and simulated sexual activity. Such "gross sexuality" was found by the administrative body named as defendant in *LaRue,* when performed in establishments where liquor was sold, to incite even grosser activity, audience participation, sexual assaults and rapes, prostitution, and physical assault on customers, employees, and police officers. Although the evidence is not nearly as persuasive here, there was undisputed testimony that crowds became "boisterous" when such acts were performed and that in one instance customers became so rowdy they were requested to leave. This Court does not hold the City has no authority to "nip in the bud" such "gross sexuality" which may lead to the situation that the California liquor authorities faced in *LaRue.*

The Court finds the "amateurs", on a few occasions had removed clothing, and had danced "topless", clad only in underwear pants and boots, during the club's amateur nights. The purpose of amateur night was to reward the girl who in the patrons' view had the best performance. While nudity no doubt played a major role in determining the best performance, dancing also was a factor as contestants were at least once successful without removing clothing. This court is of the opinion that *LaRue* does not state that, pursuant to the Twenty-first Amendment, the Liquor Control authorities can proscribe all topless dancing. The *LaRue* court was not concerned with the issue of topless dancing *per se,* and in light of *Peto* must be limited to the facts out of which the case arose. While there was evidence that crowd participation was avid in the selection of a "winner" during amateur nights, such evidence cannot support the across-the-board proscription here. The Court finds it is the intention of the authorities to enforce the ordinance and ban all topless dancing. This Court agrees with the reasoning of Escheat, Inc. v. Pierstorff, 354 F.Supp. 1120 (W.D.Wis. 1973), concerning this issue:

"A preliminary issue is whether, in the aftermath of *LaRue, supra,* any activity taking place within a licensed tavern can be protected by the first amendment. Earlier in this opinion in my description of the *LaRue* holding, I noted that the majority held that a state may prohibit the presentation in bars of performances which are within the limits of constitutionally protected free expression. Although the majority does not face the question directly, it implies that not all performances of this genre may constitutionally be prohibited in bars:

Viewed in this light, we conceive the State's authority in this area to be somewhat broader than did the District Court. This is not to say

that all such conduct and performance is without the protection of the First and Fourteenth Amendments. But we would poorly serve both the interests for which the state may validly seek vindication and the interests protected by the First and Fourteenth Amendments were we to insist that the sort of Bacchanalian revelries which the Department sought to prevent by these liquor regulations were the constitutional equivalent of a performance by a scantily clad ballet troupe in a theater. 409 U.S. at 118, 93 S.Ct. at 397.

The final sentence in this passage suggests that a 'scantily clad ballet troupe' performing in a theater would receive the full protection of the first amendment. Would such a performance receive similar protection if the theater were licensed to serve liquor? The passage quoted suggests an affirmative answer. Furthermore, a negative answer would constitute an erosion of first amendment freedom which I am unwilling to accept, absent an explicit holding by the Supreme Court requiring such a result. Therefore, I conclude that some shows which fall somewhere between Mary Poppins, on the one hand, and 'Bacchanalian revelries,' on the other, even when performed in a bar, continue to be entitled to first amendment protection." at 1125, 1126.

Finally, the plaintiff in the case at bar presented a film to the Court depicting a common performance at the club which falls within the ordinance's proscriptions, but which obviously falls outside the "gross sexuality" with which LaRue is concerned, and thus First Amendment protections remain applicable. The film presentation portrayed body painting, whereby the female performer clad only in bikini-type pants applied paint to the front of her upper body, and pressed a white piece of paper thereto. Upon completion of this procedure, the paper was removed revealing a portrait, either of independent facial studies or a likeness of one of the club's patrons, which, considering the medium, was remarkably accurate. The Court finds the contemplated application of Ordinance No. 2768 would preclude this performance which is clearly entitled to First Amendment protection in spite of LaRue.

If subsection 6 is subject to First Amendment restrictions insofar as it is applicable to topless dancing or body painting as expressive art forms, this Court is faced with the question of whether, and in what respect, subsection 6 is violative of First Amendment protections. There is no doubt that the specificity necessary to apprise the plaintiff of the exact conduct proscribed is present in subsection 6. Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). However, as to the contemplated application of the ordinance to bar topless dancing per se, as well as body painting, the Ordinance does not meet the requirement that, where an administrative procedure operates to suppress allegedly obscene expression, such regulation or procedure must provide for a prompt judicial review to determine whether the conduct is indeed obscene. Peto, Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Blount v. Rizzi, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971); Escheat. Freedman and Blount state that the First Amendment requires prompt judicial determination in such cases "because of the independence of the judiciary and because of the 'sensitive tools' which the judiciary brings to the delicate task of distinguishing between protected and unprotected speech." Escheat, 354 F.Supp. at 1125. Miller sets forth the limits of permissible regulation of obscenity and the guidelines against which the trier of fact must judge whether a given subject matter is obscene activity or protected activity under the First Amendment.

"We acknowledge, however, the inherent dangers of undertaking to regulate any form of expression. State statutes designed to regulate obscene

materials must be carefully limited. As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. . . . "

"The basic guidelines for the trier of fact must be: (a) whether the 'average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 U.S. at 23, 24, 93 S.Ct. at 2614. (citations omitted).

In *Freedman* the court struck down a state scheme for administrative licensing of motion pictures, commenting that:

"because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint." 380 U.S. at 58, 85 S.Ct. at 739.

*Blount* explained the need for judicial determination as follows:

"Since . . . 'the line between speech unconditionally guaranteed and speech which may legitimately be regulated . . . is finely drawn . . . [t]he separation of legitimate from illegitimate speech calls for . . . sensitive tools . . .'," quoting Speiser v. Randall, 357 U.S. 513, 525, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958).

*Freedman* noted that "there inheres the danger that [a nonjudicial decision maker] may well be less responsive than a court—part of an independent branch of government—to the constitutionally protected interests in free expression", 380 U.S. at 57, 58, 85 S.Ct. at 738. Subjection of the plaintiff to revocation of her license based on allegedly obscene performances which utilize uncovered breasts without provision for a prompt judicial determination of whether the performances are obscene in light of *Miller* guidelines, is not constitutionally permissible. *Peto; Escheat.*

In *Escheat*, a Wisconsin federal district court found that the *Blount* and *Freedman* decisions were applicable to liquor license revocation procedures. *Peto*, stating that prior to seizure of allegedly obscene printed matter or film, held that such materials cannot be seized without a warrant, even where such materials are sold at liquor establishments, relying on Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973).

"[N]o prior adversary hearing is constitutionally required under the First and Fourteenth Amendments before the seizure of allegedly obscene books or films. So long as no 'final restraint' is contemplated, the Constitution merely mandates that:

'[A] judicial determination must occur "promptly so that administrative delay does not in itself become a form of censorship." ' " 364 F. Supp. at 4. (citations omitted).

*Peto* therefore ordered "[t]hat to the extent Regulation LCC–1–52 of said Department of Liquor Control exceeds the permissible limits of regulation as set forth in California v. LaRue, *supra*, and seeks to regulate printed materials which have not, in an adversary hearing before a competent judicial tribunal, been previously found obscene under the standards of Miller v. California, it is unconstitutional and is hereby permanently enjoined . . . ." at 5. (citations omitted in part).

■■ The Supreme Court, in balancing the states' broad regulatory power over liquor sales under the Twenty-first Amendment against the right of free expression under the First Amendment, has limited the area in which a state may, unrestricted by the First Amendment, regulate obscenity in liquor establishments to "certain types of live entertainment or movies . . . [which]

'partake more of gross sexuality than of communication'." *Peto*, 364 F.Supp. at 3. Topless dancing *per se* and body painting do not fall within the gross sexual entertainment subject to unrestricted regulation under *LaRue*. Thus, if the City of Fremont desires to proscribe performances where the human female breast is uncovered, such as topless dancing or body painting, it must, prior to revocation of the license for an alleged violation of the ordinance by reason of the performance, provide for prompt judicial review. First, the question of whether the performance depicts sexual conduct must be decided. If it is determined that the performance depicts sexual conduct, then, in view of the states' broad power over liquor establishments, the judicial fact finder must first determine whether the performance sought to be proscribed, considered in its entirety and in light of its effect on the patrons of the licensed premises, constitutes gross sexuality and thus within the permissible limits of regulation as set forth in *LaRue*. If the judicial fact finder determines that the performance does not constitute gross sexuality, the performance must be considered in light of First Amendment obscenity standards recently adopted in *Miller*: [12]

1. Whether the average person applying community standards would find the performance, taken as a whole, appeals to the prurient interest.

2. Whether the performance presented, in a patently offensive way, sexual conduct specifically defined by applicable state or municipal law, and

3. Whether the performance, taken as a whole, lacks serious literary, artistic, political or scientific value.

That part of subsection 6 which proscribes "the showing of the human male or female genitals, pubic area or but-

tocks, with less than a full opaque covering," falls within the unrestricted regulatory area permissible under *LaRue*, and such performances may be proscribed in liquor establishments without prompt judicial review.

## SEVERABILITY

An issue remains as to whether, as plaintiff maintains, that in view of the failure of several portions of the ordinance and the lack of a severance clause, the entire ordinance is invalid. It is true that a severance clause, which is not included here, creates "a presumption that, eliminating invalid parts, the legislature would have been satisfied with what remained . . . ." *Champlin Rfg. Co. v. Commission*, 286 U.S. 210, 235, 52 S.Ct. 559, 565, 76 L.Ed. 1062 (1931). However, the Supreme Court in *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L. Ed.2d 138 (1967), noted that the presence or absence of severance clauses is rarely determinative of the issue of severability, citing several cases where invalid statutory provisions had been severed despite the absence of any severance clause, at 585, n. 27, 88 S.Ct. 1209. *Jackson* discusses in detail the question of severability. In that case, the Supreme Court considered the Federal Kidnapping Act which provided for the death penalty when a kidnapped person was harmed "if the verdict of the jury shall so recommend," or (2) by imprisonment for life of some term of years. The death penalty was held to impose an impermissible burden upon the exercise of a constitutional right to a jury, but the court further held, in reversing a district court's dismissal of an indictment brought under the Kidnapping Act, that there was no reason to invalidate the law in its entirety merely because its capital punishment clause violated the Constitution. The following language is enlightening:

"The unconstitutionality of a part of an Act does not necessarily defeat

12. *See also* Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973).

. . . the validity of its remaining provisions unless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." at 585, 88 S.Ct. at 1218, quoting from *Champlin.*

"The clause in question is a functionally independent part of the Federal Kidnapping Act. Its elimination in no way alters the substantive reach of the statute and leaves completely unchanged its basic operation." at 586, 88 S.Ct. at 1218.

The Court concluded Congress would not have chosen to discard the entire statute if informed that it could not include the invalidated death clause. The Supreme Court has thus set forth two criteria to consider in determining an issue of severability.

(1) Is the ordinance or statute in question functionable or operable without the stricken language or provision? *See also* Albaugh v. United States, 448 F.2d 760 (10th Cir. 1971); Diaz v. Weinberger, 361 F.Supp. 1 (S.D. Fla.1973); Morrison v. Wilson, 307 F. Supp. 196 (N.D.Fla.1969). The ordinance here provides several distinct and separate grounds upon which to base revocation.[13] *See* Sipes v. United States, 321 F.2d 174 (8th Cir. 1963).

The vague phrases, and the invalid part of subsection 6, may be stricken and Ordinance No. 2768 would nevertheless provide several separate and distinct grounds upon which the City may validly base a license revocation.

(2) Will the alteration of Ordinance No. 2768 so change the purpose, scope or operation of the statute in a way the City Council never intended. Norton v. Weinberger, 364 F.Supp. 1117 (D.Md. 1973); Diaz v. Weinberger, 361 F.Supp.

1 (S.D.Fla.1973); Poe v. Menghini, 339 F.Supp. 986 (D.Kan.1972). From the pleadings and argument, it appears that the main thrust of the Ordinance was aimed at barring nudity at liquor establishments. Although a close question is presented, the cases above cited in connection with this issue evince a strong judicial policy to avoid invalidating entire legislative schemes where the subject legislation may be cleansed, where the remaining legislation is both operable and reflective of a legislative intent to so regulate the subject matter of the statute.

"This sub-section, however, may be stricken, without interfering with the operation of the remainder of the statute, nor can it be said that the legislature of Florida would not have enacted this statute had it known this sub-section would be deleted." Morrison v. Wilson, 307 F.Supp. 196, 199 (N.D.Fla.1969).

This Court cannot state that the City of Fremont would not have enacted the remaining provisions of the statute in question had it been aware of the invalid sections, especially in view of the independence of subsections under Section 3–17.

Therefore, this Court holds (1) that the following language in Ordinance 2768 is unconstitutionally vague and cannot be enforced:

1. Section 3–17: "or any statutory provision or ordinance of the City now existing or hereafter passed, enacted in the interests of good morals and decency . . . ."

2. Section 3–17(2): "or other crime or misdemeanor opposed to decency and morality".

3. Section 3–17(4): "or has failed to perform in accordance with any other statement or representation or keep any promise, oral or writ-

---

13. *See* Miami Health Studios, Inc. v. City of Miami Beach, 353 F.Supp. 593 (S.D.Fla. 1972), where "lewdness", and the phrase, "or for any other lewd or indecent act", as well as the definition of "lewdness" were ex-

cised from the ordinance under attack. The remainder of the statute concerning prostitution, which was adequately defined, was allowed to stand even though a word or phrase was stricken from nine sections.

ten, made to the Council in connection with such licensee's request for said license."

It is further held that subsection 6 is unconstitutional in part, and cannot be enforced, in proscribing performances in which breasts are uncovered, such as topless dancing and body painting, without a provision in the Ordinance for prompt judicial review prior to the revocation of a license for violation of this proscription, to determine whether the performance considered in its entirety and in the light of its effect on the patrons of the licensed premises constitutes gross sexuality and thus within the permissible limits of regulation as set forth in California v. LaRue or whether it was a form of communication entitled to First Amendment protection.

The City of Fremont and its officials and agents are enjoined from enforcing these sections of Ordinance No. 2768 herein found to be invalid.

It is ordered that judgment be entered accordingly.